(No. 16277.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MIKE MARUDA, Plaintiff in Error.

*Opinion filed December 16, 1924.*

1. CRIMINAL LAW—*when possession of stolen property is not evidence of larceny.* The recent unexplained possession of stolen property by the defendant is evidence of his guilt of larceny, but where there is no proof that the articles found in the defendant's possession belonged to the owner named in the indictment, or, if so, that they were taken from him without his knowledge or consent, the defendant is not required to explain his possession.

2. SAME—*what does not prove larceny.* The mere fact that goods are missing, with no proof of the circumstances, does not prove a larceny.

3. SAME—*corpus delicti cannot be proved by confession, alone.* The *corpus delicti* cannot be proved by an extra-judicial confession, alone, but it may be proved by circumstantial evidence, or by such evidence considered in connection with the confession.

4. SAME—*when corpus delicti is not established.* A confession alleged to have been made by the defendant to the detectives who

arrested him for larceny, who claim to have found the stolen property in his possession, is not sufficient, with other evidence, to establish the *corpus delicti,* where there is a failure to identify the property found as belonging to the owner named in the indictment and where the property produced at the trial is not identified as that which was found in the defendant's possession.

5. SAME—*what does not render alleged confession inadmissible.* An alleged confession of larceny is not rendered inadmissible, as being involuntary, where there is no evidence of duress except the defendant's own testimony, which is denied by the witnesses to whom the confession was made and who testify that it was made freely and that the defendant understood what was said to him and knew what he was saying, although the conversation was carried on in the English language, which defendant spoke with difficulty.

6. SAME—*jury may be instructed that they are judges of the law.* The jury may be instructed that they are judges of the law as well as the facts in a criminal case, provided they upon their oaths consider that they know what the law is, but they should not be so instructed without including such limitation.

7. SAME—*what jury may be instructed to disregard as evidence.* The jury may be instructed to disregard as evidence the indictment, statements of counsel, offers to prove certain alleged facts, and testimony stricken out by the court.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. GEORGE FRED RUSH, Judge, presiding.

GEORGE B. COHEN, and ABRAHAM H. COHEN, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (HENRY T. CHACE, JR., EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

Upon the trial on an indictment in the criminal court of Cook county charging Mike Maruda in one count with larceny and in another with receiving stolen goods, he was found guilty of larceny and was sentenced to the penitentiary. He seeks by writ of error to reverse the judgment.

Maruda was a night porter in the retail store of Marshall Field & Co. His wages were $22 a week. He was first employed in August, 1922, and remained in that employment until December, when he quit of his own accord. He was again employed in July, 1923, and remained in that employment until his arrest, in September. His duty was cleaning in the different departments of the store, and his hours of work were from 5:30 in the evening until 2:00 o'clock in the morning. In the evening of September 13 Joseph Lillus, who was an employee of the McGuire & White Detective Agency, assigned to duty regularly in Marshall Field & Co.'s retail store, telephoned to John J. Hopper, another employee of the detective agency, to come to the store. Nathaniel L. Crawford, who was the superintendent's assistant in the store, was also summoned there. These three met during the evening in Crawford's office in the department of the store known as the special service department. Maruda was there, with Hopper and Lillus and another man whose name does not appear. Crawford testified that he found Maruda sitting in his office with Hopper, who told Crawford that the man was under arrest. Crawford asked Maruda what he had been doing, and Maruda said he had taken a couple of dresses, which were at his home. Crawford asked, "How did you get them out?" He said, "I put them in my pocket and wrapped them around my body." Crawford asked, "Have you got anything more at your house that you have taken?" Maruda answered, "No," and Crawford said, "Well, Mike, we will have to go out and see whether you have got anything there or not." Maruda said, "All right; you can come out." Hopper testified that he asked Maruda if he had any merchandise at his home that was the property of Marshall Field & Co. or property which he had stolen from the stock. Maruda answered that he had; that about a month or two before he had taken two dresses and given them to his wife, and a little later had taken a third dress which his wife wanted,

and he had perhaps taken some small articles from different places on the main floor. Hopper then said that they were going to search his home; that he could give them authority to search it or they would get a search warrant in the morning. Maruda said that he wanted them to search his home; that they would find nothing there but his own goods. Crawford, Hopper, Lillus, Maruda and the other man then about midnight went in a taxicab to Maruda's home, on the second floor of a building at 3201 South Morgan street. Hopper testified that when they entered Mrs. Maruda was sitting on the floor with a quilt and a lot of small merchandise; that they also found there about twenty dresses, the same number of ladies' bags and pocket bags, razors, opera glasses, shoes, and all sorts of merchandise; that he talked with Maruda while they were at the house and asked him where he got certain articles which Hopper had at the time in his hand, and Maruda said he bought some of the articles on Halsted street, some he stole at the store of Marshall Field & Co., and some he found. Crawford testified that they found there fifty or sixty dresses. The merchandise found at Maruda's home was gathered up in bundles and taken out in suit-cases, bags and boxes to the taxicab in which the trip from the store had been made. The parties returned to the store, and after leaving the merchandise inside the Randolph street door of Marshall Field & Co.'s store Maruda was taken to the detective bureau.

At the trial a large quantity of merchandise was produced before the jury, from what source the record does not show. None of it was identified as a part of the articles found at Maruda's home except ten dresses which Crawford testified that he saw there, and some bags. None of these ten dresses were identified as the property of Marshall Field & Co. All the testimony of Crawford offered on this question was excluded. The State's attorney was given permission to withdraw the witness for a moment.

He left the witness stand and the court room and was not further examined on this question. In regard to the bags referred to above, Crawford testified that he found them in a trunk and in a bureau in Maruda's home and asked him whose they were, and he said they were Marshall Field's. Hopper testified, on cross-examination, that he could pick out three articles in the court room that he saw at Maruda's that night: "A traveler's watch, one of those bags or a bag similar to those, and two pairs of ladies' white silk hose with a sort of a brownish tint at the heel." The watch was not included in the indictment, the bag was only a bag similar to those in court, and none of the articles were identified as the property of Marshall Field & Co. Hopper testified that he left all the merchandise inside the Randolph street door of Marshall Field & Co.'s store and did not follow it beyond that point. There is no evidence in the record as to what became of the goods so left at the store and no evidence that they were the same goods produced at the trial.

The State introduced evidence to prove the ownership of Marshall Field & Co. of some of the articles produced on the trial. Mrs. Ryan, a saleswoman in the moderately-priced dress section, identified four dresses and no more, saying that she recognized them as belonging to Marshall Field & Co. and had seen them in her section. Then she stated the value of them. The dresses were not identified as coming from the possession of Maruda, and Mrs. Ryan testified, only, "I know they were our dresses, but whether they were sold or not I don't know." Lena Ledrich, who had charge of the children's hosiery section, identified hosiery as the property of Marshall Field & Co. and testified that similar hosiery was missing last summer, which was the summer of 1923, during the months of July and August. Jacob B. Schoninger was department manager and buyer in the cutlery and leather goods department. He identified various articles as the property of Marshall Field & Co.

which were produced before the jury,—a shaving mirror, cigar and cigarette holders and pocket knives,—and testified to their value. He stated that they had no more trouble last summer than they usually had in the way of missing property; that they were always missing things from time to time. Marie Lehmicke testified that some of the hand bags produced were the property of Marshall Field & Co. and some of them were not. She testified that goods were missing frequently. None of these last four witnesses from the store of Marshall Field & Co. had any knowledge of any larceny or crime, of any particular articles being missing, of anything being missing under circumstances indicating it might have been stolen, or identified any article as having been missing from the store or stolen.

There was no proof of the *corpus delicti* in this case,—that a larceny had been committed,—aside from the alleged statements, admissions or confessions of Maruda, which he wholly denied. The fact that property has been taken from the possession of the owner without his knowledge or consent is evidence of a larceny; that such property so shown to be stolen is soon afterward found in the possession of another is evidence that he is the thief. The testimony, however, does not show that the articles produced in evidence before the jury or the articles found in Maruda's possession were taken from the possession of Marshall Field & Co. without their knowledge or consent. The evidence is that some articles of merchandise were missing from the Marshall Field & Co. store, but not that the articles about which testimony was given on this trial were so missing. The fact that some pairs of stockings bearing the Marshall Field & Co. brand of "Burlington" were missing, or even were stolen, would not cast upon every person who might be found within a short time afterward with a pair of Burlington stockings in his or her possession the burden of explaining that possession. The mere fact that goods are missing, with no proof of the circumstances, does not prove

a larceny. It must be shown that their taking was without the knowledge or consent of the owner. The possession of fifty or sixty dresses, each worth $40, by a night porter working for $22 a week, without any other source of income, would afford ground for suspicion that they might have been stolen, but, in the absence of other evidence of a larceny, would not call upon the person in possession to explain his possession. The fact that some goods had been missing from the store would not call upon the plaintiff for explanation of his dresses without proof that they were part of the goods so missing. In this case it is not shown that the plaintiff in error was in possession of the property of Marshall Field & Co., or that the property of which he was in possession had been stolen from Marshall Field & Co., by evidence other than his own statement. The law is well settled that the *corpus delicti* cannot be proved by extra-judicial confessions, alone. (*Williams* v. *People,* 101 Ill. 382; *Andrews* v. *People,* 117 id. 195; *Bartley* v. *People,* 156 id. 234.) It may, however, be proved by circumstantial evidence; (*Campbell* v. *People,* 159 Ill. 9; *People* v. *Sec,* 258 id. 152; *People* v. *Goodwin,* 263 id. 99;) and an extra-judicial confession may be considered, in connection with the other evidence, to establish the *corpus delicti,* and if the evidence of other facts and circumstances so fully corroborates the confession as to show the commission of the crime beyond a reasonable doubt, may be sufficient. (*Johnson* v. *People,* 197 Ill. 48.) It is not sufficient, however, in this case, because of the failure to identify the property found in Maruda's possession as that of Marshall Field & Co., and the failure to identify the property testified about on the trial as that which was found in Maruda's possession.

It is argued on behalf of the plaintiff in error that the statements made by Maruda were not voluntary; that he was ill-treated by Hopper and was unable to understand what was said to him or to make himself understood in the

English language, and therefore his statement was not admissible in evidence. He is a Pole, who speaks the English language with difficulty, and the conversations testified to by Crawford and Hopper were carried on in the English language. There is no evidence of any duress exercised on the plaintiff in error except his own testimony, and this is denied by Crawford and Hopper. According to their testimony Maruda made his statement voluntarily and freely and understood what was said to him and knew what he was saying. There is no reason for holding the statement was not voluntarily made.

Complaint is also made of the refusal of instructions. It was error to refuse the ninth instruction, which was as follows:

"In this State, the jury are the judges of the law as well as of the facts in a criminal case, and are entitled to pass on the legal points involved in the case to the exclusion of any instructions of the court, if they, upon their oaths, consider that they know what the law is. If, under all the circumstances, they are prepared to say that the court is wrong in its exposition of the law, the law has given them that right."

The giving of this instruction was approved in *People v. Kuchta,* 296 Ill. 180.

Instruction 18 was that the jury are the judges of the law as well as the facts in this case. It was properly refused. The statement is not the law except subject to the limitation contained in instruction No. 9.

Instruction 17 was refused. It is as follows:

"The indictment in this case is a mere formal charge, and is not in itself any evidence against the defendant. Statements of counsel are not evidence and should not be so considered. Offers to prove certain alleged facts which may have been made in your presence are not evidence, and you should not take the same into consideration, nor allow yourselves to be in any manner influenced thereby.

Neither should the jury consider any testimony stricken out by the court."

It should have been given. The proposition contained in the first sentence was included in instruction 7, which was given, but no other part of the instruction was covered by the instructions given. The last sentence, particularly, was important to the plaintiff in error, because certain evidence which had been given in regard to the ownership of the property was afterward stricken out by the court, and the jury should have been instructed that they were not to consider that testimony.

The judgment will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*