(No. 24286.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EVERETT BETTS, Plaintiff in Error.

*Opinion filed December 17, 1937.*

FARTHING, C. J., and SHAW, J., dissenting.

A. W. Schimmel, for plaintiff in error.

Otto Kerner, Attorney General, Merrill H. Johnston, State's Attorney, and A. B. Dennis, (Winthrop B. Anderson, and Edwin Johnston, of counsel,) for the People.

Mr. Justice Jones delivered the opinion of the court:

Plaintiff in error, Everett Betts, was convicted in the circuit court of Pike county of the larceny of three heifers, and the cause is here for a review.

Charles Williams was the owner of the heifers. They were kept in his pasture, which was about a half-mile wide north and south and extended west to the Mississippi river. The pasture was enclosed by a barbed wire fence consisting of three wires; the lowest wire was one foot from the ground, the highest about four feet, and the other wire half-way between them. The fence had been repaired during the latter part of July or August. The defendant's farm, also on the Mississippi river, was about three miles away, being separated from the Williams farm by another large farm. Williams and his wife testified that they saw the heifers in their pasture about the last part of August or the first of September and that they did not go to the pasture again until October 16, at which time the heifers were gone. Defendant testified that he first saw the heifers in his pasture sometime in August; that he did not know whose they were, and that he always waited for the owners to come after stray cattle, instead of inquiring for the owner. Several other people kept their cattle in defendant's pasture for hire. One of them was Guy Crowder, who, with his son Carl, was previously tried and acquitted on a charge of larceny of the same heifers. Williams and his wife testified that they asked defendant, about a day or two after they missed the heifers, if he had seen three heifers and that he said he had not. Mrs. Williams referred to them

as "stray heifers" and testified that she told defendant that if he saw them wandering around to let them know. Defendant denied that Mrs. Williams asked him about the heifers at all, and said that Williams asked him, after the heifers had been disposed of in October, if he had seen "any cow" and defendant told him he had not, not thinking about these three heifers.

The evidence is conflicting as to the disposal of the heifers. Defendant testified that Guy Crowder owed him fifty dollars pasture rent after deducting a ten-dollar difference in threshing accounts; that Crowder asked if he could take the heifers to St. Louis and sell them to get the money with which to pay defendant; that he told Crowder they did not belong to him, but were "strays" and that he would have nothing to do with it. Crowder and his son Carl testified that defendant sold the heifers to Guy without saying anything about the ownership. The Crowders hauled the heifers away from defendant's farm on Saturday, October 5. They took them to the farm of Tony Arth, near Collinsville, arriving about 3:00 A. M. Sunday. On that day they sold them to Arth for sixty-six dollars and a few days later paid defendant fifty dollars. The uncontradicted testimony of eight witnesses shows defendant's good reputation for truth and honesty.

One of the numerous errors assigned is that the evidence is not sufficient to sustain a conviction of larceny. It was incumbent on the People to prove the *corpus delicti*, one element of which was that the heifers were lost to the owner through a felonious stealing. (*People* v. *Wallace*, 303 Ill. 504.) While the *corpus delicti* may be proved by circumstantial evidence, the fact that the heifers were in defendant's pasture soon after they disappeared from the Williams pasture is not, of itself, enough to prove they had been stolen, or that defendant had any connection with it. The exclusive, unexplained possession of recently stolen property may raise an inference of guilt sufficient

to authorize a conviction for larceny in the absence of other evidence raising a reasonable doubt of guilt. (*People* v. *Adamek*, 354 Ill. 551; *People* v. *Lawson*, 351 id. 457; *People* v. *Stone*, 349 id. 52; *People* v. *Lehner*, 335 id. 424; *People* v. *Graves*, 331 id. 268.) The rule is not applicable to this case. In the first place, it was not proved that the heifers were stolen from the Williams pasture. There is no evidence as to how they got out of there. While the testimony shows the fence had been repaired in July or August, there is no testimony to show that it was in good repair when the heifers left the pasture, or that they could not reasonably have escaped or that defendant's fence would prevent the entry of estrays. The record shows that cattle frequently strayed in that vicinity. The testimony of both Williams and his wife refers to them as "stray heifers," indicating they realized that they might have escaped from the pasture unaided.

The People claim that even if a taking from the owner's pasture was not proved, still defendant was guilty of larceny by his subsequent conversion of the heifers to his own benefit. It is the general rule of law, in the case of lost goods, that if the finder, at the time of finding intends to deprive the owner permanently of his property, and if he knows or has a reasonable clue as to who the owner is, he is guilty of larceny. (*Tyler* v. *People*, Breese 293; *Lane* v. *People*, 5 Gilm. 305; *People* v. *Csontos*, 275 Ill. 402.) Tested by this rule defendant has not been proved guilty of larceny. There is no proof that he knew who the owner was, that he ever visited the Williams farm or ever saw their cattle. The People stress the fact that one heifer had a stub horn and another a peaked face. While that would make description or identification of the heifers easier, yet, without a showing that defendant knew Williams had heifers of that description, it does not tend to prove his guilt. Defendant was under no duty to advertise or to make inquiry for the owner as far as the crime of larceny is con-

cerned. Although the elder Crowder claims that he purchased the heifers from the defendant, the surrounding facts and circumstances indicate the truth of defendant's testimony that he permitted the Crowders to take the heifers and sell them in order that they might pay him for pasture rent. The alleged sale does not bear the earmarks of an ordinary transaction. It would be quite unusual for a poor tenant to make a sale of livestock to someone else and receive no down payment or some evidence of an indebtedness. The stock was sold by Crowder and the fifty dollars he sent by his son was not delivered for some days after the father returned from the East St. Louis stockyards.

In order to constitute larceny by conversion of goods found or of stray animals, there must be, at the time of the finding, an intent to deprive the owner of his property. The evidence does not show such intent here. Defendant allowed the heifers to remain openly in his pasture for some thirty to forty days where a number of other people were pasturing their cattle. The evidence tends to show he had no intent to convert them to his own benefit, at least up to the time they were taken away by the Crowders. Assuming that he later sold them and that the sale showed such an intent formed subsequent to the finding of the animals in his pasture, such an intent will not relate back to the finding so as to constitute the crime of larceny. (*Lane* v. *People, supra; Starck* v. *State,* 29 Ohio St. 184; *Commonwealth* v. *Titus,* 116 Mass. 42; *Regina* v. *Matthews,* 12 Cox's C. C. 489.) The testimony shows defendant's good reputation for truth and honesty. However poor his judgment may have been in failing to make inquiry to learn the name of the owner of the property, the proof is not sufficient to support a conviction for larceny.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

FARTHING, C. J., and SHAW, J., dissenting.