The People of the State of Illinois, Plaintiff-Appellee, v. Keith Stoafer, also known as Keith J. Stoafer, Defendant-Appellant.

Gen. No. 68–68.

Fifth District.

July 22, 1969.

Rehearing denied October 16, 1969.

Edward Neville, Neville & Rice, of East St. Louis, for appellant.

Ronald Niemann, State's Attorney of Marion County, of Salem, for appellee.

GOLDENHERSH, P. J.

In an indictment returned in the Circuit Court of Marion County, defendant, Keith Stoafer, also known as Keith J. Stoafer, was charged in Counts I and II with the crime of Murder (c 38, § 9–1, Ill Rev Stats 1967) and in Count III with the crime of Voluntary Manslaughter (c 38, § 9–2, Ill Rev Stats 1967). In each count he was charged with killing one Harry M. Smith. Defendant was tried by jury and convicted of the offense of Voluntary Manslaughter. The court denied post-trial motions for Judgment n. o. v., new trial, and arrest of judgment and sentenced defendant to the Illinois State Penitentiary for not less than three (3) and not more than fourteen (14) years.

As grounds for reversal defendant argues that the evidence fails to prove him guilty beyond a reasonable doubt.

On the night of September 14, 1967, defendant had spent several hours in the Block Tavern in Centralia playing pool and drinking beer. His wife, Ceola, was also in the tavern and spent several hours drinking beer and talking with the deceased, Harry M. Smith, hereafter called Smith.

Defendant left the tavern, alone, at about 10:30 p. m. Ceola Stoafer and Smith left the tavern together at approximately 10:45 p. m. in Smith's pickup truck. Smith drove the truck to a lane opposite the Terminal Road near the Paramount Club. At approximately 12:20 a. m.

on September 15, 1967, someone opened the right door of the pickup truck and fired a shotgun at Smith, causing his death.

Mrs. Stoafer testified that she and Smith had been intimate over a period of five months, had sexual intercourse on the night in question, and at the time of the shooting they were both nude.

Barbara Hall testified that at approximately 11:10 p. m. on September 14, 1967, while parked in the parking lot of the Paramount Club, she observed a two-tone green Cadillac pull into the south entrance of the lot, turn off its lights and turn around. She had the bright lights on and saw the driver's face. She identified defendant as the driver.

Marvin Neabuhr was parked in the Paramount lot for a period of approximately two hours. He saw Barbara Hall there, and while she was there, a two-tone green 1957 Cadillac was driven onto the lot, turned around, and its headlights were turned off. Shortly thereafter the Cadillac drove away, in a northerly direction.

Kate McClelland testified that at about 12:30 a. m. on September 15th, she saw an automobile drive up the driveway which led to the trailer home occupied by defendant and his wife. The driveway is adjacent to the home of the witness. The automobile she saw had "high tail fins," as did defendant's Cadillac. She saw lights go on in defendant's trailer.

Grover Duncan testified that at approximately 12:45 a. m. on September 15th he was driving on Route 51, south of Centralia when a woman "flagged" him down. She was bloody, hysterical and only partly clothed. She told him "something horrible" had happened. He drove her to the City Hall in Centralia.

Dwight Cross, a Centralia police captain, testified that Mrs. Stoafer was brought to the police station at 12:35 a. m. and when he saw her, she was in the Duncan car. He and the Sheriff of Marion County went to the

place where the pickup truck was parked, "about a mile south of Wamac." He described the scene, the interior of the truck, and the body of the deceased.

Martin Beck, Sheriff of Marion County, testified that he and Captain Cross went to the scene of the shooting. Don Donahue, a State Trooper, and Charles Mathus, Chief of Police of Wamac were there when they arrived.

Donald Donahue, a State Trooper, testified that at approximately 12:45 a. m. on September 15, in response to a call from the Centralia Police Department, he drove to the old Terminal Road and found a truck parked on a lane at the "junction of new 51 and old 51." It was approximately 50 to 75 feet east of old highway 51 and was headed east. He identified photographs of the truck, and the body of the deceased.

Sometime between 1:30 a. m. and 3:30 a. m. on September 15th, Donahue and Mathus went to the defendant's trailer and arrested him. At the time of the arrest defendant was in bed. Defendant asked "What's going on?," but did not inquire as to the reason for the arrest.

Approximately 7:00 a. m., Donahue went to the scene of the shooting with James Wentworth, a crime scene technician for the Illinois State Bureau of Criminal Investigation. Some shotgun pellets were found on the dashboard of the truck. A spent shotgun casing was picked up approximately 6 to 8 feet from the right door of the truck.

Later in the morning the witness accompanied by Wentworth, Mrs. Stoafer and an assistant state's attorney, went to defendant's trailer. They found a shotgun and several shotgun shells in the trailer. Approximately 50 feet south of the trailer, they found a spent shotgun shell. Defendant's automobile was parked near the trailer. Mrs. Stoafer gave him permission to take the shotgun.

James Wentworth testified that in response to a call on the early morning of September 15, he went to the

Centralia police station. He arrived there at approximately 5:00 a. m. He went to a funeral parlor and examined the body of the deceased. He was given some lead shot taken from the body. From there he went to defendant's trailer, arriving there at approximately 7:00 a. m. He identified a shotgun as having been taken from defendant's trailer, with the permission of Mrs. Stoafer. He identified shotgun shells taken from the trailer, and a spent shotgun shell picked up approximately 30 yards from the trailer. He also identified a spent shotgun shell found near the right hand door of the truck. This was a Western Super X shell of the same type as those taken from defendant's trailer. There were several Budweiser cans in defendant's car and he stated there was a "fairly fresh" Budweiser beer can, with no rust on it, found near the truck. He identified a beer can as the one found near the truck. Wentworth testified that the exhibits were placed in containers, marked, and delivered to his superior, Forrest R. Litterly. At the scene he "dusted for finger prints," but found none of defendant's prints.

Forrest R. Litterly, assistant superintendent of the Illinois State Bureau of Criminal Identification and Investigation, identified two lead shot given him by Wentworth and described by him as those removed from Smith's body, and stated they were compatible with the shot found in Super X Western No. 6 shells. He also identified lead shot as those given him by Wentworth and allegedly taken by Wentworth from the truck, as being compatible with No. 6 shot.

Litterly was qualified with respect to his experience in the examination and comparison of the markings made on shells and cartridges by firearms, and identified a shell as having been given him and described by Wentworth as found at defendant's home, one described by Wentworth as having been found near the scene of the shooting, and a third fired by Litterly from the shot-

gun taken from defendant's trailer. He stated that in his opinion all three shells were ejected from defendant's shotgun.

No evidence was offered by defendant.

■ ■ A conviction may be based upon circumstantial evidence, People v. Williams, 40 Ill2d 522, 240 NE2d 645. As stated by the Supreme Court in People v. Huff, 29 Ill2d 315, 194 NE2d 230, at page 320, "The fact that the circumstantial evidence relied upon must not give rise to any reasonable hypotheses under which the defendant could be innocent of the crime charged, (People v. Benson, 19 Ill2d 50; People v. Hooper, 364 Ill 320; People v. Ahrling, 279 Ill 70), does not mean that the trier of fact is 'required to search out a series of potential explanations compatible with innocence, and elevate them to the status of a reasonable doubt.' (People v. Russell, 17 Ill2d 328, 331.)"

■ From our examination of the record we conclude that the evidence is sufficient to sustain the conviction, and the guilty verdict should not be disturbed. People v. Robinson, 14 Ill2d 325, 153 NE2d 65.

■ Defendant contends that the trial court erred in admitting into evidence the shotgun found in his trailer, and taken without a search warrant and without his consent. The record shows that Mrs. Stoafer occupied the trailer along with defendant and she consented to the search and the removal of the shotgun. Under these circumstances the evidence thus obtained was properly admitted. People v. Palmer, 26 Ill2d 464, 187 NE2d 236; People v. Walker, 34 Ill2d 23, 213 NE2d 552.

■ Defendant's final contention is that the evidence does not show the offense to have been committed in Marion County. The testimony of several witnesses fixed the place where the deceased's truck was parked as being in a lane near the junction of old and new highways 51, and approximately 50 to 75 feet east of old highway 51. The trial court, in denying defendant's post-trial

203

motions, took judicial notice of the boundaries of Marion County and found that the west boundary of Marion County is between 50 and 125 feet west of the place where the deceased was found. The trial court correctly held the proof of venue to be sufficient. People v. Clark, 9 Ill2d 400, 137 NE2d 820; People v. Allen, 413 Ill 69, 107 NE2d 826.

For the reasons set forth the judgment of the Circuit Court of Marion County is affirmed.

Judgment affirmed.

MORAN and EBERSPACHER, JJ., concur.