THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PRENTISS JACKSON, Defendant-Appellant.

First District (4th Division) No. 61154

Opinion filed December 30, 1975.

James J. Doherty, Public Defender, of Chicago (Anthony C. Sabbia and Judith A. Stewart, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, John T. Theis, and Eugene J. Rudnik, Jr., Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

After a bench trial, Prentiss Jackson (defendant) was found guilty of aggravated battery (Ill. Rev. Stat. 1971, ch. 38, § 12—4) and not guilty of attempted murder (Ill. Rev. Stat. 1971, ch. 38, § 8—4). The trial judge sentenced him to a term of 3 to 9 years in the penitentiary. Defendant appeals, presenting two issues for review: (1) whether the State failed to prove beyond a reasonable doubt that defendant caused the injury complained of; and (2) whether the State failed to carry its burden of proving beyond a reasonable doubt that defendant was not acting in self-defense.

On June 27, 1973, at approximately 5:30 p.m., Mrs. Birdie Billingslea was shot while crossing Madison Street between Oakley Street and Western Avenue in Chicago. She sustained injuries which required intensive care for about 27 days and further hospitalization for another month. The facts surrounding the incident were in dispute.

Mrs. Billingslea testified that immediately prior to being shot, she had left a laundromat on West Madison Street and was headed for her car which was parked on the opposite side of Madison. After reaching the middle of the street, she heard shots, was hit by a bullet and fell to the ground. The witness did not know in which direction she was facing when hit or from which direction the bullet came. She did not see anybody shooting a gun.

Officer Robert Loughran testified that he and his partner, Officer Callaghan, were on duty in an unmarked car on June 27, 1973. At approximately 5:30 p.m. they were waiting at a traffic signal at the intersection of Oakley and Madison Streets in Chicago. The officer heard a few shots being fired directly in front of them on Madison and observed a car traveling in their direction. When the car was directly across from an individual identified as defendant, he pulled out a gun and fired several shots at it. The car continued proceeding eastbound on Madison as the shots were fired.

Officer Loughran further testified that they then proceeded, and were about in the middle of the intersection when he first observed a woman, identified as Mrs. Billingslea, walking diagonally across Madison from north to south. She was to the left of defendant between him and the officers. Officer Loughran then saw two final shots being fired, the last of which struck Mrs. Billingslea, and saw her fall to the ground. At that time no other shots were being fired. They went to Mrs. Billingslea's aid and called for assistance.

While with Mrs. Billingslea, the witness observed defendant walk west on Madison and get into a Cadillac automobile. He stopped briefly at the intersection of Western and Madison for a traffic light and then turned south on Western. Both officers entered their car to pursue and pulled him over near 100 South Western shortly thereafter. Defendant, the sole occupant of the car, was placed under arrest, advised of his *Miranda* rights, and put into the police car. Officer Loughran drove the Cadillac and his partner drove the squad car back to the scene and then to the police station.

Loughran searched the Cadillac for a weapon and recovered a loaded gun with six spent shells from a false plate in the dashboard. He went into the office and informed his partner. At this time, Loughran testified, defendant stated, "Well, I guess you got me," and "Well, am I in a lot of trouble?" The officer replied that he presumed so since the woman was about 65 years old and in serious condition. Defendant answered, "Well, I didn't mean to shoot her. I was shooting at the car."

On cross-examination, the witness testified that no artificial street lighting was required because it was still bright at 5:30 p.m. He saw Mrs. Billingslea fall after the last shots were fired and concluded that it was the same bullet that inflicted the injury. However, he admitted not knowing if the bullet which wounded her had been from one of the shots previously fired. He also conceded that the police report concerning the incident did not indicate that any oral or formal statement was taken.

No ballistics tests or fingerprint dust of the weapon was conducted. A vehicle registration check showed that the car did not belong to defendant.

Officer John Callaghan testified that defendant was firing a gun in an easterly direction on Madison Street about 50 yards from the intersection when he first observed him. He then noticed a woman with a grocery bag crossing Madison from north to south in a southeasterly direction. After defendant fired the last shot, the woman, identified as Mrs. Billingslea, fell to the ground, approximately 40 feet from defendant. The officers, at this time, were pulling through the intersection and were estimated to be about 30 feet closer to defendant.

The witness testified that while defendant was in their office at the station, his partner entered with the gun. Defendant then stated, "Well, I guess I'm in trouble now," and asked whether the woman was alive. On cross-examination, the officer admitted that the case report did not indicate an oral statement had been made. He also could not testify whether Mrs. Billingslea had been shot at a prior time, walked along, and just stumbled.

Bernard Johnson, a witness on behalf of defendant, stated that on June 27, 1973, he and Prentiss Jackson were coming from the south side en route to his girl friend's house on the west side. The car in which they were riding belonged to Bobby Long. The two decided to stop at a hot dog stand at Western and Madison. Defendant went into the stand to order while Johnson stood outside talking with five or six other persons who were standing in front of a funeral home about two doors away. When the shooting started, Johnson ran into the funeral home and then ran into the hot dog stand to tell defendant that they should leave. Defendant paid for the hot dogs and they returned to the car and drove off.

A policeman, identified as Officer Loughran, stopped the car, ordered them to exit and searched their persons but found nothing. At that point, another officer, identified as Callaghan, drove up with an individual who pointed to defendant and said, "That's the boy right there." The police then put defendant into an unmarked car and drove away. Another officer took the Cadillac. The witness testified that neither he nor the defendant had a gun and that to his knowledge there was no gun in the car.

Prentiss Jackson took the stand in his own behalf. He testified that on June 27, 1973, he and Johnson were going to visit his girl friend when they decided to stop for hot dogs. He parked the car and both exited. Defendant entered the hot dog stand and shortly after he placed the order, Johnson ran in and said, "Come on, man, let's go." The order was

paid 'for and both returned to the car. They pulled off, stopping at the first light on Western for a few minutes, and then made a left turn onto Western. When they stopped for the next light, a police officer pulled up in an unmarked squad car, pulled out a gun and told defendant he was under arrest.

Defendant testified that he stopped the car and exited. The officer ordered Johnson to get out and come around to the driver's side. Both individuals were searched but nothing was found. The officer handcuffed defendant and put him into the car. At this point, another police officer came on the scene with a person who said that defendant was "the one that did it."

Defendant stated that car in which he had been riding belonged to Bobby Lawrence and that he had obtained the car at about 4 p.m. on that day. Jackson testified that he did not shoot a gun in the vicinity of Madison and Western, did not have a gun and did not know of one in the car. He denied having made any statement to the police concerning the incident.

Defendant first contends that the State failed to prove beyond a reasonable doubt that the injury complained of was caused by the defendant. This contention is based on the testimony of both officers that it was possible that Mrs. Billingslea was hit by a bullet fired from the moving automobile and their inability to state conclusively how the injury was caused. It is argued that these factors amount to a reasonable hypothesis that the bullet which struck Mrs. Billingslea had been fired by someone other than the defendant.

■■ While it is incumbent upon the State to prove beyond a reasonable doubt each element of the offense (*People v. Galan* (1969), 110 Ill.App.2d 98, 100, 249 N.E.2d 118), circumstantial evidence may be used to establish guilt. "[C]ircumstantial evidence is legal evidence which will support a conviction, it being necessary only that the circumstances proved be of a conclusive nature and tendency leading, on the whole, to a satisfactory conclusion and producing a reasonable certainty that the accused and no one else committed the crime." *People v. Lacey* (1968), 93 Ill. App.2d 430, 434, 235 N.E.2d 649.

Our review of the record establishes that both officers testified that defendant fired two final shots in the direction of Mrs. Billingslea, that she was hit and, consequently, fell to the ground, and that no one else was shooting at the time. Mrs. Billingslea testified that she fell to the ground immediately after being hit. While there is no direct evidence that the last bullet fired from defendant's gun injured the victim, the

officers' testimony clearly leads to a reasonable and natural inference that defendant shot Mrs. Billingslea. Where evidence is in part circumstantial, the conclusion that the defendant is guilty beyond a reasonable doubt need not follow from proven circumstances but may be obtained therefrom by probable deduction. (*People v. Kelley* (1963), 29 Ill.2d 53, 59, 193 N.E.2d 21.) While it may be possible that someone else shot Mrs. Billingslea, the trier of fact is not required to search out a series of potential explanations compatible with innocence and elevate them to the status of reasonable doubt. *People v. Puckett* (1972), 6 Ill.App.3d 206, 209, 285 N.E.2d 258; *People v. Stoafer* (1969), 112 Ill.App.2d 198, 203, 251 N.E.2d 108.

■■ The fact that the evidence is in conflict is not, in itself, sufficient to raise a reasonable doubt as to defendant's guilt. (*People v. Hanserd* (1970), 125 Ill.App.2d 465, 469, 261 N.E.2d 317.) It had often been held that the testimony of one witness alone, if positive and credible, is sufficient to convict even though the testimony is contradicted by the accused. (*People v. Stringer* (1972), 52 Ill.2d 564, 569, 289 N.E.2d 631; *People v. Miller* (1964), 30 Ill.2d 110, 113, 195 N.E.2d 694.) In this case, two unimpeached eyewitnesses, both police officers, had an adequate opportunity to view the occurrence from a reasonably close position. The defendant admitted being at the scene and was arrested within minutes in the vicinity. We believe that the evidence in this case is both consistent with defendant's guilt and inconsistent with a reasonable hypothesis of innocence. *People v. Murdock* (1971), 48 Ill.2d 362, 367, 270 N.E.2d 21; *People v. Hayes* (1972), 4 Ill.App.3d 997, 1000, 282 N.E.2d 777.

Defendant's second contention is that the State failed to carry its burden of proving beyond a reasonable doubt that defendant was not acting in self-defense when he fired the shots found to have struck Mrs. Billingslea. It is correctly pointed out that self-defense is an affirmative defense (Ill. Rev. Stat. 1971, ch. 38, § 7—14) which justifies the use of force against another when and to the extent a person reasonably believes such conduct is necessary to defend himself against such other's imminent use of unlawful force. Ill. Rev. Stat. 1971, ch. 38, § 7—1.

Defendant does not contend that he raised the issue of self-defense; in fact, he could not be heard to so claim on appeal because his attorney specifically stated that self-defense was not the basis of the defense and because he claimed that he had not been shooting in the area. In *People v. Lahori* (1973), 13 Ill.App.3d 572, 300 N.E.2d 761, the trial court's refusal to tender a self-defense instruction in a murder prosecution was upheld on appeal. The defendant there had testified that at the time of the incident, he blacked out and was unaware that he had shot the

deceased. The appellate court found that no legally satisfactory evidence was presented which could have been the basis for such an instruction. It was held that raising the defense of self-defense requires as its sine qua non that the defendant admit the killing as the basis for a reasonable belief that the exertion of such force was necessary. Accordingly, any claim on appeal of self-defense as an affirmative defense would be deemed to have been waived by failing to raise it at trial. *People v. Nugara* (1968), 39 Ill.2d 482, 489, 236 N.E.2d 693.

However, if an issue involved in an affirmative defense is raised by the State's evidence, the State must sustain the burden of proving the defendant guilty beyond a reasonable doubt as to that issue. (Ill. Rev. Stat. 1971, ch. 38, § 3—2(b).) Defendant urges that the issue of self-defense was raised by the State's evidence through the testimony of its primary witnesses, Officers Loughran and Callaghan. This evidence, in relevant part, is that they heard shots being fired and observed an automobile traveling eastbound on Madison; and that just after the shots were fired, when the automobile was passing directly across from defendant, he pulled out a gun and fired while it continued proceeding eastbound on Madison.

■■ In *People v. Brumbeloe* (1968), 97 Ill.App.2d 370, 377, 240 N.E.2d 150, the court listed the elements which must exist to prove the defense of self-defense: (1) that force was threatened against the defendant; (2) that the defendant was not the aggressor; (3) that the danger of harm was imminent; (4) that the force threatened was unlawful; and (5) that the defendant reasonably believed that a danger existed which the use of force was necessary to avert, and the kind and amount of force used were necessary. In order to be deemed to have raised the issue, the State must have presented "some evidence" as to these elements.

A reading of the record shows that not one scintilla of evidence was presented which tended to show that force was threatened against the defendant. The officers did not testify that the shots from the automobile were being fired in the direction of defendant. Both defendant and his witness claimed that he was inside the hot dog stand at the time. Consequently, no evidence of danger of harm could be established. Evidence is also totally lacking on the last element: reasonable belief of danger and necessary use of force. For these reasons, we hold that the evidence was not sufficient to raise the issue of self-defense.

■■ We also note that the defense of self-defense is not available where the initial aggressor retreats from the conflict and the defendant assumes

the role of aggressor by pursuing the conflict. (*People v. Fort* (1970), 119 Ill.App.2d 350, 355, 256 N.E.2d 63; *People v. Peery* (1967), 81 Ill.App.2d 372, 377, 225 N.E.2d 730.) At the time defendant fired the lost shots—one of which wounded Mrs. Billingslea—no other firing occurred. There was ample evidence to support a finding that defendant was not acting in self-defense at that point because the initial aggressor had retreated.

In view of the foregoing, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

DIERINGER, P. J., and BURMAN, J., concur.