THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSEPH L. THRUMAN *et al.*, Defendants-Appellants.—(LU ANN THRUMAN *et al.*, Defendants.)

Second District   No. 76-263

Opinion filed August 25, 1977.

Ralph Ruebner and Andrew Berman, both of State Appellate Defender's Office, of Elgin, for appellants.

William E. Sisler, State's Attorney, of Freeport (Phyllis J. Perko and Martin P. Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE BOYLE delivered the opinion of the court:

Joseph L. Thruman, hereinafter "Thruman," and Richard A. Plum, hereinafter "Plum," were indicted along with two other defendants by a Stephenson County grand jury on September 25, 1975, for burglary and misdemeanor theft. The two other defendants were severed from this cause for reasons not relevant to this appeal.

After a jury trial, Thruman was convicted of burglary and theft of property having a value of less than $150. Thruman was sentenced to three years' probation with 120 days to be served in the Stephenson County jail on the burglary conviction, and his conviction of theft of property having a value of less than $150 was vacated. Plum was acquitted of the burglary charge and was convicted of the theft of property valued under $150. Plum was sentenced to six months in the Stephenson County jail, the sentence to run concurrently with a sentence of six months in the Stephenson County jail and four years' probation on a plea of guilty to theft over $150 in another case.

Only one issue is presented by both defendants on appeal, and that is whether the State proved each defendant guilty of the offenses charged beyond a reasonable doubt. We will deal first with the defense contentions as to defendant Thruman.

A warehouse in Freeport, Illinois, was broken into some time in the late evening of the 28th or the early morning of the 29th of July, 1975. The burglars gained entry into the warehouse by breaking a panel in the main overhead door. Fifteen cases of Falstaff Beer, a half-barrel of beer, and three six-packs of Carling Black Label Beer, having a total approximate

value of $110, were reported missing by the owners. At the time of the offense, defendant Thruman lived approximately two buildings east of the warehouse.

Officer Thomas J. McIntyre investigated the break-in at the warehouse and observed shoe prints on the floor and a tennis shoe print on the broken panel of the warehouse door. It appeared to the officer that all of these footprints were made by the same individual. Sergeant Rolland Munda testified that the footprints outside the warehouse appeared to be heading north through the woods. The witness followed these prints and discovered Falstaff and Carling Black Label beer cans on this route. Officer Munda then encountered three young boys and obtained information concerning a Mr. Thruman and a Mr. Plum. The officers proceeded to Thruman's residence where both Thruman and Plum were arrested. It appeared to the officers that Thruman's footprints resembled the footprints found in and around the warehouse.

The officers thereafter scoured the immediate area around Thruman's residence in search of the stolen property. The officers found an empty Falstaff Beer can in Yellow Creek, which flows through part of the defendant, Thruman's, property. Thruman's explanation for the empty Falstaff can was that the area was used by fishermen and that the Falstaff can could very easily have come from them.

The officers also found a paper bag of burnt beer cans, some of which were Falstaff, at a dump used by local residents near the front door of Thruman's duplex. The ashes, however, were not warm, so the burnt beer cans did not appear to be of recent origin. Thruman's only explanation for the beer cans was that the cans were left from a Saturday night party.

The State also introduced a couple of cases of empty bottles and a half-barrel of beer which were found approximately 2½ miles east of Thruman's house. Thruman contends that these cases and half-barrel have no evidentiary value because of their distance from both the warehouse and his residence and the State's failure to connect these cases and half-barrel to Thruman.

The State also found some tools in Thruman's car; however, the tools were not stolen from the warehouse, and no evidence was adduced that these tools were used to gain admittance.

Sherry Murphy testified that she saw a washtub with three cans of Falstaff at Thruman's residence at noon on July 29, the afternoon following the burglary. Thruman, however, rebutted this testimony by two witnesses who testified that no beer was in the tub at all on that date.

The State's chief witness, Allen Huenefeld, age 13, testified that he saw Thruman at 3 a.m. outside of his residence in a car on the night of the burglary. Huenefeld further testified that he saw Plum with a 16-ounce Falstaff at approximately the same hour. Huenefeld's recollection of the

details of the facts on the night in question, however, are somewhat hazy, but he was positive that he saw Plum drinking the Falstaff beer on that night. The defense attacks Huenefeld's credibility by pointing to the following activities of the 13-year-old on the night in question. On the night of the break-in at the warehouse, Huenefeld admitted stealing five six-packs of beer from the warehouse and taking them to his fort. Huenefeld also admitted that he was going to steal some oil on the night of July 28 before he saw the warehouse open and stole the five six-packs of beer. On the morning following the burglary, Huenefeld also collected some tools he "found" in his backyard. Huenefeld admitted to only one visit to the warehouse to steal beer, but later changed his testimony to two visits.

The State's other direct evidence consisted of testimony regarding footprints which were found on the door panel on the outside of the warehouse on the morning following the robbery and which allegedly were Thruman's. Thruman did not deny that he was at the warehouse on the night in question, but testified that his sole purpose in being there was to chase out two young boys at 11:30 p.m., who were inside the warehouse stealing six-packs of beer. Thruman testified that he was with his wife and that they chased Allen Huenefeld (the State's chief witness) and his brother out of the warehouse at that time. Allen Huenefeld denied this incident entirely.

■■ The State contends that the combination of Allen Huenefeld's testimony, along with the other circumstantial evidence in this case, leads one to the inevitable conclusion that Joseph Thruman committed the burglary of the warehouse. We disagree. The testimony of Allen Huenefeld as to his activities on the night in question exhibit a reckless disregard for the property of others. Huenefeld admitted that his true purpose on the night in question was theft of oil. His purpose changed when he saw the opportunity to steal five six-packs of beer. In addition, Huenefeld demonstrates a similar disregard for other people's property in that he took the tools he found in his backyard. Thus, Huenefeld's testimony contains too many variances and discrepancies which reflect upon his credibility as the State's chief witness. These variances and discrepancies have led us to conclude that Huenefeld's testimony lacks credibility. *People v. Brown* (1975), 32 Ill. App. 3d 182, 336 N.E.2d 523.

■■ The State, therefore, must rely upon its circumstantial evidence to establish the guilt of Thruman. Its circumstantial evidence, standing alone, is, at best, weak. It strains reason to conclude that Thruman and his co-conspirators could remove $110-worth of beer from a warehouse and, upon their apprehension within hours, to have either totally disposed of it or drunk it all. We find that the State's circumstantial evidence does not produce a reasonable and moral certainty that the defendant, Joseph

Thruman, committed the burglary. *People v. Thompson* (1975), 35 Ill. App. 3d 105, 340 N.E.2d 631; *People v. Jackson* (1975), 35 Ill. App. 3d 215, 340 N.E.2d 673.

The State's evidence in regard to Plum consists of testimony by Allen Huenefeld that Plum was on the porch drinking a Falstaff beer at 3 a.m. on the morning of July 29, 1975. Plum's own testimony was that he spent the night with the co-defendant, Thruman. The State contends that since Plum admits that he spent the night with Thruman, Plum must have known that the Falstaff he drank on the night in question was stolen. The State further contends that Plum was exerting control over beer taken from the warehouse when Huenefeld saw him on the porch drinking a Falstaff at 3 a.m., knowing that it was stolen and that circumstantial evidence amply establishes that Plum was guilty of the theft. We disagree.

■■ In order to sustain a conviction of theft, the State must prove that the property was stolen and that the defendant knowingly exerted control over the stolen property, intending to deprive the owner of its use. The State completely failed to meet that burden. In addition, the mere presence of Plum at Thruman's residence, even with the knowledge that a crime had been committed, without more, is insufficient to establish any accountability of Plum for this theft. *People v. Banks* (1975), 28 Ill. App. 3d 784, 329 N.E.2d 504.

■■ The evidence against Plum consists entirely of circumstantial evidence. It is clear that where a conviction is based solely on circumstantial evidence, the guilt of the accused must be so thoroughly established as to exclude every other reasonable hypothesis. (*People v. Gilbert* (1976), 38 Ill. App. 3d 816, 349 N.E.2d 609; *In re Whittenburg* (1976), 37 Ill. App. 3d 793, 347 N.E.2d 103.) The evidence against Plum does not meet this standard. The circumstantial evidence shows, at the most, Plum was drinking a can of Falstaff Beer at 3 a.m. on the night of the burglary in question. There is no showing that Plum was in control of any beer taken from the warehouse. In addition, there is no evidence that establishes that Plum participated in any way in the theft of the beer. Thus, the State wholly failed to prove Plum guilty of theft beyond a reasonable doubt, and his conviction for theft is reversed.

Joseph Thruman's conviction for burglary is reversed. Richard Plum's conviction for theft of property having a value of less than $150 is reversed.

Judgments reversed.

RECHENMACHER, P. J., and GUILD, J., concur.