THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
BLAKE LOVELESS, Defendant-Appellant.

Third District    No. 80-441

Opinion filed February 10, 1981.

Robert Agostinelli and Thomas Lilien, both of State Appellate Defender's Office, of Ottawa, for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

Following a jury trial, the defendant, Blake Loveless, was convicted of theft of property valued at more than $150 (Ill. Rev. Stat. 1979, ch. 38, par. 16—1(a)(1)). The trial court sentenced the defendant to a term of 3½ years of imprisonment for the Class 3 felony. He appeals from his conviction alleging that he was not proved guilty of theft beyond a reasonable doubt because the State offered insufficient circumstantial evidence to prove the existence of an owner with a superior interest in the property. We disagree with the defendant and affirm his conviction.

At trial, the State first offered the testimony of Special Agent William Haley of the Illinois Department of Criminal Investigation. Haley testified that on November 6, 1979, after being approached by two of the defendant's intermediaries (who were made co-defendants), he purchased from the defendant for $260 two Panasonic LTD television sets and two Pioneer stereophonic receivers. The four items had a retail value of $950. On that day, Haley worked undercover in the Peoria area, as he had for the previous two months. As Haley waited in an unmarked truck, Aaron Teamer and Brian Jones approached and spoke with Haley. Jones told Haley that the defendant had some goods that he wanted to sell to Haley. The two led Haley to Teamer's house in Peoria. As they walked inside, Jones informed Haley that he had met with the defendant earlier that day and that the goods in question were stolen. Teamer also referred to the goods as "hot shit" (stolen property). Upon entering the house, Haley saw four boxes, two for television sets and two for stereo receivers, placed on the living room floor. The defendant, Eugene Fearns, and an unknown male stood in the kitchen. After Haley inspected two of the previously unopened boxes and found that the new goods contained therein matched the description on the box, he negotiated with Teamer and Jones a purchase price of $260. The defendant then approached Haley for the first time and declared that the merchandise belonged to him and that Haley should pay him. Haley paid the defendant who then left the house. Haley loaded the four boxes into his truck and departed.

The second State witness was Mary Bonner, the security manager for P. A. Bergner and Company (hereinafter Bergner), an Illinois corporation. Bonner had met with Haley about one week after the sale because the four boxes were stamped "Ship to P. A. Bergner." He gave Bonner the serial numbers to the goods. Subsequent checking indicated that the goods were received by Bergner's Pioneer Park warehouse sometime during the first week in November.

Bonner explained to the court the process by which Bergner distributes its home electronic equipment. The goods are first ordered from Klaus', Bergner's wholesaler. Klaus immediately stamps "Ship to P. A.

Bergner" on those boxes ordered by the company. The items are then sent from Klaus' to the Pioneer Park distribution center. After the goods are received the incoming shipping manifests are destroyed, the items are checked in undated according to serial number, and then they are marked with a stick tag. Once the tag is applied to the box it can only be removed by ripping the box. The warehouse then ships the marked boxes to a Bergner retail outlet on one of the firm's trucks. Bergner retains the records of shipments to its retail outlets. Customers are not permitted to pick up merchandise at the warehouse nor are Bergner employees authorized to remove any merchandise from the warehouse.

At trial, Bonner inspected the four boxes that contained the two television sets and two stereo receivers. Each was stamped with the legend "Ship to P. A. Bergner." None of the boxes had a mark where a stick tag had been pulled off. Bergner's records indicated that at some time during the first week of November 1979, it received and paid for a shipment of merchandise bearing the same serial numbers as the goods sold to Haley. Klaus' records corroborated that fact. She also stated that there was no record of the merchandise being dispatched from Pioneer Park to a retail outlet. Bonner therefore concluded that the goods were stolen from the Pioneer Park warehouse before they reached the marking room. She could not, however, identify the date of the theft, because the shipping receipts from Klaus' were destroyed, and the check-in procedure did not indicate the date of receipt. She also admitted that Bergner was unaware that the four items were missing until after her meeting with Haley.

The defendant was the only defense witness. He testified that he, Jones, Teamer, and Fearns arranged the sale of the goods that were owned by a man named Renaldo. The defendant admitted that he received the $260 from Haley, but he immediately handed the money to Renaldo. The defendant denied stealing the property or ever seeing it before he entered Teamer's house on November 6. He also denied having any previous transactions with Haley. On rebuttal, the State introduced Haley's testimony that on October 29, 1979, the defendant sold him a microwave oven which was concealed in a trunk of a car occupied by the defendant, Jones, and Fearns. The State also introduced the defendant's two prior convictions for impeachment purposes.

The jury returned a guilty verdict. Following a sentencing hearing, the trial court sentenced the defendant to a term of 3½ years of imprisonment.

■■ In order to prove the offense of theft the State must only show that someone other than the accused held an interest in the allegedly stolen property (Ill. Rev. Stat. 1979, ch. 38, par. 15—2) and that the accused obtained or exerted unauthorized control over that property with the

intent to permanently deprive the owner of its use or benefit. (Ill. Rev. Stat. 1979, ch. 38, par. 16—1(a)(1); *In re W. S.* (1980), 81 Ill. 2d 252, 408 N.E.2d 718.) The proof of a superior property interest and the exertion of unauthorized control may be established by circumstantial as well as direct evidence. *(People v. Bernette* (1964), 30 Ill. 2d 359, 197 N.E.2d 436.) When proof of these elements is in dispute, the jury must determine the credibility of the witnesses and the weight to be accorded their testimony. A reviewing court will not disturb the jury's determination of guilt unless the record indicates "too many hypotheses consistent with [the defendant's] innocence" such as to raise a reasonable doubt of his guilt. *People v. Joy* (1976), 44 Ill. App. 3d 349, 352, 358 N.E.2d 101, 103.

■■ In the case at bar we find that the record contains more than a sufficient quantum of evidence, albeit circumstantial, for the jury to have found that the four items sold to Haley were stolen from Bergner and that the defendant, by selling them, exercised unauthorized control over that property. We cannot agree with the defendant's contention that Bergner did not have a superior interest in the property. Bonner's uncontroverted testimony regarding Bergner's established business practices clearly demonstrated that the boxes containing the missing merchandise were checked in according to serial number at its warehouse and that Bergner paid for the shipment. The absence of stick tag markings and delivery receipts to a retail outlet clearly showed that the firm did not dispatch the property from the warehouse. That conclusion was supported by the firm's established practices of not permitting customer pickups at the warehouse and not authorizing its employees to remove any items from the warehouse. Thus, Bergner did not sell the merchandise or otherwise release its property interest as the defendant contends. We also find unpersuasive the defendant's argument that because Bergner was unaware that the property was missing from its warehouse until Haley notified Bonner, we should be more hesitant to find that the missing goods were actually stolen. The firm's records indicated that the goods should have been located in the warehouse, but they were not. The statements of Jones and Teamer that the goods were "hot" or stolen further supports the conclusion that the goods were stolen. Likewise, the evidence strongly showed that the missing property and the property sold by the defendant were one and the same. The properties had the same serial numbers and were identical in condition, description, and quantity. After reviewing the whole record, we conclude that the evidence does not suggest any reasonable doubt that Bergner had a superior property interest in the goods and that the missing goods and the allegedly stolen goods were one and the same.

The defendant advances several cases to demonstrate that the circumstantial evidence in the case at bar failed to establish beyond a

reasonable doubt that Bergner owned a property interest superior to that of the defendant. (*People v. Betts* (1937), 367 Ill. 499, 11 N.E.2d 942; *People v. Maruda* (1924), 314 Ill. 536, 145 N.E. 696; *People v. Joy* (1976), 44 Ill. App. 3d 349, 358 N.E.2d 101; *People v. Cowan* (1977), 49 Ill. App. 3d 367, 364 N.E.2d 362; *People v. Thruman* (1977), 52 Ill. App. 3d 13, 367 N.E.2d 379.) These cases are, however, distinguishable from the case at bar in that the nexus between the missing property and the property in the defendant's possession was more attenuated than in the instant case. For example, in *Thruman*, defendant Plum's conviction for theft of several cases of beer was reversed when the reviewing court held that the State failed to prove beyond a reasonable doubt that Plum possessed the allegedly stolen property. At trial, the State introduced circumstantial testimony that the defendant was seen drinking a can of beer close to the site of the theft shortly after the crime took place. He drank the same brand of beer as that stolen. In reversing his conviction, the court declared that such circumstantial evidence was insufficient to prove that the defendant's beer was in fact part of the stolen cache. In the case at bar, on the other hand, the missing goods and the goods sold by the defendant carried the same manufacturer's serial number. Such evidence almost conclusively demonstrated that the properties were one and the same. In *Joy* the defendant was convicted of theft after he was arrested trying to sell the allegedly stolen property, a ring. The reviewing court reversed because the record contained no evidence that a theft occurred at the alleged victim's house and because the evidence raised a reasonable doubt as to whether the missing property and the defendant's property were one and the same. In the present case, Bergner's established record-keeping practices and its restrictions on employees circumstantially demonstrated that a theft had taken place. That conclusion was supported by the statements of the defendant's accomplices that the electronic equipment, which came from Bergner, was stolen. In *Maruda* the defendant's conviction for larceny was reversed because some of the goods allegedly stolen by him were not shown to have been in his possession. Such a situation is not analogous to that in the instant case.

■■ Lastly, the defendant seems to contend that in order to prove theft the State must show how and when he feloniously broke into the warehouse and removed the property. Such a requirement is unnecessary, for unexplained possession of recently stolen property is sufficient to infer guilt. *People v. Betts* (1937), 367 Ill. 499, 11 N.E.2d 942.

For the foregoing reasons, we affirm the defendant's conviction in the Circuit Court of Peoria County.

Affirmed.

BARRY and HEIPLE, JJ., concur.