People of the State of Illinois, Plaintiff-Appellee, v. James D. Smith (Impleaded), Defendant-Appellant.

Gen. No. 53,811.

First District, Third Division.

July 2, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Harold A. Cowen, Norman W. Fishman and James J. Doherty, Assistant Public Defenders of Cook County, of Chicago, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James S. Veldman, Assistant State's Attorneys, of Chicago, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

In a jury trial the defendant was found guilty of murder and armed robbery. After a hearing in aggravation and mitigation, he was sentenced by the court to the Illinois State Penitentiary for not less than thirty nor more than sixty years. On appeal he contends (1) the State failed to prove him guilty beyond a reasonable doubt, (2) his cross-examination of a prosecution witness was unduly restricted, and (3) the withdrawal of his attorney following the verdict but prior to the hearing in aggravation and mitigation was highly prejudicial. The evidence adduced was mainly circumstantial and covered a considerable period of time. For that reason a rather lengthy summary is necessary to an understanding of the issues raised on appeal.

The deceased, Dominic Lamberta, was the proprietor of Drive-In Liquors, a combination tavern and packaged liquor store in East Chicago Heights, Illinois. At approximately 7:10 a. m. on December 19, 1966, Mrs. Fern Glenn, a bartender arriving for work, discovered Lamberta's body on the floor outside his office. His back pocket had been pulled out and his wallet was missing. The cause of death, according to a pathologist employed by the Cook County Coroner, was a bullet which had penetrated his brain. The last persons seen in the tavern with the deceased were the defendant James Smith, his brother Donald, and two customers, Glenn Broomhead and his wife.

Mrs. Glenn testified on behalf of the State. She told of her discovery of the body on Monday morning, December 19, 1966. She further testified that a tally of the weekend receipts added up to $2,700, that it was Lamberta's usual practice to take the receipts home with him on Sunday night, that a check of the two cash registers in the store yielded $100, the amount always kept there, and that an additional $200 which was kept on hand for bar change was found in a metal box in the office. On cross-examination, Mrs. Glenn testified that it was customary for Lamberta to handle her funds and that at the time of his death he had $900 belonging to her in his possession; that when she arrived for work on the morning of the 19th, the doors were locked; that one had been bolted from the inside and that the other door, through which she entered, had been locked with a key. She further testified that there were in existence only three keys to that door, one which she had, another which was found on the deceased's body, and the third, which was always kept in the cash register and which was missing.

Earl Hansen testified that he worked as a bartender at Drive-In Liquors on the night preceding the discovery of Lamberta's body. He knew the defendant and his

brother as former customers who, prior to the event in question, had frequented the tavern twice a week. Hansen recalled that about two weeks before the murder, he removed the side door key from the cash register in the packaged goods area of the store and that at that time the defendant and his brother were both standing nearby. The last time Hansen saw Lamberta alive was immediately prior to his leaving the tavern at about 12:45 a. m. on December 19, 1966. At that time he looked into all the rooms and found that the only persons remaining, other than Lamberta, were the defendant James Smith, his brother Donald and Mr. and Mrs. Broomhead.

Mrs. Broomhead testified that she arrived at Drive-In Liquors a little after midnight. She saw no one enter from the time Hansen left until Lamberta accompanied her and her husband to the door a little after 1:00 a. m. Since she had remained at a small bar in the packaged goods area of the store, which was separated from the tavern section by a partition, she did not actually see either the defendant or his brother. She testified, however, that she was able to hear male voices coming from beyond the partition.

Glenn Broomhead testified that he and his wife arrived at Drive-In Liquors at about 12:40 a. m. and remained about twenty minutes. In all other respects his testimony is consistent with that of his wife.

Defendant's mother testified that her son had been living with her on December 18, 1966. He left home that evening and was not seen again until he was apprehended by the Indiana State Police on February 9, 1967. Defendant's brother also left his home on December 18, 1966, and according to the testimony of his wife, was not seen again until February 9, 1967.

The search for James and Donald Smith, as among the last persons to see Lamberta alive, continued until February 9, 1967. The events leading to their capture

were related by one Frank Vincent, who rented a cabin behind the Hill Top Tavern in Hammond, Indiana. At about 4:00 p. m. on February 8th, Vincent went to his cabin. He testified that as he entered, defendant grabbed him from behind and holding a gun to the back of his head said, "Don't say anything or don't try anything foolish or I'll kill you." Later the defendant warned him that he had already committed one murder and that one more would not make any difference. The witness was forced to take both men to the cabin of Ben Desotell, the owner of the Hill Top Tavern. Desotell was not in his room. When he returned, however, he was confronted by the Smiths who were holding guns pointed directly at him. Defendant stayed with Desotell while his brother had Vincent drive him to his (Donald's) home. After complying with Donald Smith's demand, Vincent drove to Cook, Indiana, where he telephoned the State Police. When the police arrived at Desotell's cabin, defendant surrendered.

J. P. Mahr was the only witness called on behalf of defendant. He testified that he had been employed by the defense as a private investigator; that in August 1967, he had a conversation with Frank Vincent, during which Vincent said that the defendant had never admitted killing anyone; and that Vincent repeated that statement to him three or four times.

We will proceed to a consideration of defendant's contention that the evidence fails to establish his guilt beyond a reasonable doubt. He urges that there is a lack of evidence to connect him with the crime, such as fingerprints, the missing key, the murder weapon and the stolen money; that there were no eyewitnesses; that the evidence of flight is inconclusive and that the testimony of Vincent as to defendant's alleged admission of guilt was rebutted by Mahr's testimony. Viewing the evidence in its entirety, however, it shows that Dominic Lamberta was murdered in his tavern, that

$3,600 was taken from the tavern, that among the last persons to be seen with the deceased were the defendant and his brother. When the killers left the tavern, they locked the door behind them with a key taken from the cash register. The evidence shows that the Smiths had an opportunity to learn the location of that key. Immediately after the murder and apparently without returning to their homes, the defendant and his brother disappeared for over seven weeks. In addition, there was the testimony that the defendant admitted the commission of a murder.

■ ■ In Illinois, evidence of an accused's flight has long been held admissible as a circumstance which may be considered with other evidence as tending to prove guilt. People v. Rossini, 25 Ill2d 617, 185 NE2d 831; People v. Lobb, 17 Ill2d 287, 161 NE2d 325; People v. White, 99 Ill App2d 270, 240 NE2d 342. The fact of an accused's flight is evidence of a consciousness of guilt and thus is probative of guilt itself. 2 Wigmore, Evidence, § 276 (3rd ed, 1940); People v. Herbert, 361 Ill 64, 196 NE 821. In the instant case, the crime was not revealed until the discovery of Lamberta's body at about 7:00 a. m. on December 19th. More than six hours had elapsed from the time that James and Donald Smith were seen in the tavern with the deceased and two customers. Defendant and his brother did not return home after leaving the tavern, but disappeared for well over a month, without notifying their families either of their departure or their destination. Those facts, coupled with the improbability of the knowledge of Lamberta's death being possessed by anyone other than his killers, renders the immediate departure of the defendant and his brother a highly incriminating circumstance.

■ ■ The testimony of Mahr, defendant's private investigator, conflicts with Vincent's testimony relative to the defendant's boast that he had already murdered one person. Where the evidence is conflicting, it is the

function of the trier of fact to determine the credibility of the witnesses and the weight to be given their testimony. People v. Henderson, 33 Ill2d 225, 210 NE2d 483; People v. Calcaterra, 33 Ill2d 541, 213 NE2d 270; People v. Davis, 107 Ill App2d 162, 246 NE2d 83. We can find no basis in the record for the substitution of our judgment on this point.

 Defendant contends that the circumstantial evidence upon which his conviction rests can be explained on an hypothesis of innocence which this court is bound to accept. He argues that flight is not an uncommon reaction of innocent people who believe they are prime suspects in a murder investigation; that the brothers were devoted to their families and that someone could have entered the tavern after the bartender left and perpetrated the crime. As we have before noted, Lamberta's death was not generally known until the following morning. Yet the defendant and his brother apparently did not return to their homes and their flight preceded knowledge by the public of the crime. That they had such knowledge is not explained. The brothers, it is argued, were devoted to their families and this is commendable, but it is of little aid in determining the question of guilt or innocence in the case before us. The defendant argues that it is not inconceivable that someone else entered the tavern and killed Lamberta. That is pure speculation without the slightest support in the evidence. As stated in People v. Huff, 29 Ill2d 315, 194 NE2d 230 (p 320):

> "The fact that the circumstantial evidence relied upon must not give rise to any reasonable hypotheses under which the defendant could be innocent of the crime charged [citing cases] does not mean that the trier of fact is 'required to search out a series of potential explanations compatible with innocence,

and elevate them to the status of a reasonable doubt.' (People v. Russell, 17 Ill2d 328, 331.)"

It is our conclusion that the evidence presented was sufficient to convict the defendant of robbery and murder beyond all reasonable doubt.

██ ██ The defendant contends that the cross-examination of Mrs. Glenn was improperly restricted. She was asked whether she knew John Costello, and replied that she did. She was then asked whether Costello had any interest in the tavern. An objection to that question was sustained on the ground of its irrelevancy. Defendant argues that by showing that Costello had an interest in the tavern, he would have proved that Costello would profit from Lamberta's death, and hence had a motive for the murder. The permissible scope of this type of cross-examination is largely within the discretion of the trial court. People v. DuLong, 33 Ill2d 140, 210 NE2d 513. There was no inquiry on direct examination into the business associations of the deceased. No defense theory concerning Costello with the crime was brought out. The trial court did not abuse its discretion in refusing to permit the defense on cross-examination of a witness for the State to introduce a defense theory based on sheer speculation.

██ Defendant contends that the trial court abused its discretion in allowing his counsel to withdraw prior to the hearing in aggravation and mitigation. After the verdict was reached, counsel was granted permission to withdraw and an Assistant Public Defender was appointed to represent defendant. He made motions orally for a new trial and in arrest of judgment, both of which were denied. At the hearing in aggravation and mitigation neither the State nor the defendant presented any evidence. Since defendant's attorney did not withdraw until a guilty verdict had been rendered by the jury,

any error now urged can only be directed at the imposition of sentence.

■ At the hearing in aggravation and mitigation the trial judge asked the defendant whether he had anything to offer in mitigation. Defendant's answer was "Nothing but a lot of contempt for you and your court." Defendant was asked again whether he had anything to say in mitigation and he responded with a scurrilous attack on the State's Attorney which need not be given further circulation through repetition in this opinion. Again the judge asked the defendant whether he had anything to offer in his own behalf. Defendant replied that he had nothing. The recent case of People v. Nelson, 41 Ill2d 364, 243 NE2d 225, is directly in point. The court said (p 368) :

> "A hearing in mitigation and aggravation was had, defendant was given ample opportunity to be heard and his failure to take advantage of it constituted a waiver."

In that case the court noted that to hold otherwise would permit a defendant to stand silent and if not satisfied with his sentence, seek a reduction by pleading the withheld mitigating facts on appeal. We have carefully examined the record before us and conclude that defendant has waived his right to a further hearing in aggravation and mitigation.

The judgment is affirmed.

Judgment affirmed.

DEMPSEY, P. J. and McNAMARA, J., concur.