THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES W. GREEN, Defendant-Appellant.

First District (2nd Division)    No. 77-446

Opinion filed July 18, 1978.

James J. Doherty, Public Defender, of Chicago (James H. Reddy, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Mary Ellen Dienes, and John J. Cronin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Defendant, James W. Green, was indicted for murder, armed robbery and burglary. After a bench trial in the circuit court of Cook County, he was found guilty of murder and sentenced to a prison term of 20 to 40 years. Defendant appeals his conviction.

We affirm.

The sole issue on review is whether the defendant was proven guilty beyond a reasonable doubt.

Cornelius E. King was the lessee-proprietor of an Amoco service station located at 6701 South Jeffery Boulevard. King testified that on June 11, 1975, before leaving the station he counted the money, locked the money in the middle drawer of a desk located in the storage room, and locked the storage room door. Regust Williams, the night manager for 15 years, was the only other person having a key to the desk and storage room.

Regust Williams testified that the night watchman, John Wade, arrived for work about 9:15 p.m. and he gave Wade a loaded .38-caliber gun from the desk. Williams scrubbed the floor in the service bay area, then drove a Jeep into the bay, leaving the ignition key in the ashtray. Later Williams counted out $200 in coins and currency and locked it in the desk in the storage room. The coins were put in an orange colored Delco distributor cap box in the drawer. When Williams left the station around midnight, only Wade remained.

Sammy Williams, another employee of King, arrived to open the station at 5:20 a.m. but noticed the station door was already open. He found Wade dead in the washroom and called police. King returned to the station at 6:05 a.m. and noticed the door to the storage room had been forced open. The desk also had been forced open, and the drawer containing the money was empty. King testified that the workbench had been bent at the bottom, and green paint was chipped off the grille of the Jeep. Tire marks stopped at an angle near the storage room, indicating that the Jeep and workbench were used to force open the door.

During the hearing on defendant's motion to quash the arrest and to suppress evidence found in defendant's car, Officer Ellison testified that two men, Tate and Jackson, told him Green was the man they saw come out of King's station at about 12:30 a.m. on June 12, 1975, and place a battery in the trunk of a 1968 Cadillac. Tate and Jackson later identified Green in a lineup, but they could not be located to testify at trial.

Officer Ellison testified at trial that pursuant to Tate and Jackson's identification, he and his partner went to a service station at 53rd and Lake Park to arrest the defendant. Green consented to a search of his car, stating he had nothing to hide. The police found a battery and an orange colored Delco distributor cap box containing money in defendant's car. Defendant stated he had not been to the King station since King fired him

three weeks before. When advised that he had been identified in a lineup and the proceeds of the robbery were found in his car, Green admitted he was at King's station around midnight on June 11, 1975.

Green told the police he went to King's station for the purpose of charging his battery. The door was open, so he went inside and called for the night watchman. Receiving no response, he proceeded through the open door of the storage room and took the cash from the open desk drawer. Green later admitted forcing open the desk to take the money but denied murdering Wade.

At trial it was stipulated that Wade died of gunshot and knife wounds some time during the late evening hours of June 11 or the early morning hours of June 12. No gun was found at the scene or ever recovered. Twenty dollars in currency was found in the victim's pocket. Numerous fingerprints were found in the Jeep and around the station but none matched defendant's prints.

Defendant contends the State failed to prove him guilty beyond a reasonable doubt because the proof shows only that he was present near the scene at the approximate time of the murder. He argues Regust Williams' testimony that he left the station around midnight should be disregarded because his testimony was inconsistent with the police report of the occurrence. Officer Zehme's report states Williams left the station at 11:05 p.m. Williams testified he closed the station at 11:05 p.m. but left around midnight. The officer testified that his report was only a summary and that Williams told him he closed the station at 11:05, did the necessary paperwork and then left the station.

It is well settled that the credibility of witnesses and the weight to be given their testimony is for the trier of fact. (*People v. Henderson* (1st Dist. 1976), 36 Ill. App. 3d 355, 344 N.E.2d 239; *People v. Montgomery* (1st Dist. 1974), 19 Ill. App. 3d 206, 311 N.E.2d 361.) Minor discrepancies in Williams' testimony do not render it unworthy of belief. (*People v. Hill* (3d Dist. 1977), 45 Ill. App. 3d 14, 358 N.E.2d 1350.) Thus, it was not error for the court to believe his testimony.

Defendant further argues he was not proven guilty beyond a reasonable doubt because the State's case was based entirely on circumstantial evidence. A murder conviction may be sustained "entirely by circumstantial evidence" (*People v. Marino* (1970), 44 Ill. 2d 562, 580, 256 N.E.2d 770; *People v. Brooks* (1st Dist. 1972), 7 Ill. App. 3d 767, 778, 289 N.E.2d 207, 215), but the evidence must so fairly establish defendant's guilt that no reasonable hypothesis of innocence exists. (*People v. Huff* (1963), 29 Ill. 2d 315, 320, 194 N.E.2d 230.) However, the trier of fact is not required to search out a series of potential explanations compatible with innocence and elevate them to the status of reasonable doubt. *People v. Smith* (1st Dist. 1970), 127 Ill. App. 2d 199, 206, 262 N.E.2d 165.

Defendant argues that he arrived at the station after the death of Wade. He suggests the money in the storage room was not taken by the murderer either because he did not discover it or theft was not his object. The trial judge found defendant's theory untenable. Whoever broke into the station was apparently familiar with its operation. The Jeep was used to force open the storage room door, and the record establishes defendant knew the keys to the Jeep were kept in the ashtray. Defendant also knew money was kept in the desk drawer in the storage room, and the police later recovered the money and Delco distributor cap box from defendant's car.

The sole case cited by defendant in support of his theory of reasonable doubt, *People v. Holsapple* (5th Dist. 1975), 30 Ill. App. 3d 976, 333 N.E.2d 683, is inapposite to the case at bar. In *Holsapple* the murder conviction was reversed because the court found "the evidence did not adequately exclude the possibility that someone other than the defendant" committed the crime. There was evidence that at least one other person was at the scene of the murder, and the court found it difficult to believe that "the defendant did so much in so little time" considering the "violence of the crime."

■■ In the case at bar it is probable that a substantial period of time was required to accomplish the murder of the night watchman and to force the door and desk open and remove the money. The trial judge found unreasonable the hypothesis that someone else could have murdered Wade between the time Williams left King's station and the defendant appeared. Circumstantial evidence will support a conviction if it is of a conclusive nature and produces a reasonable and moral certainty that the accused and no one else committed the crime. (*People v. Bernette* (1964), 30 Ill. 2d 359, 367, 197 N.E.2d 436; *People v. Jackson* (1st Dist. 1975), 35 Ill. App. 3d 215, 219, 340 N.E.2d 673.) The record does not reflect that the trial court's interpretation of the events in this case was contrary to the manifest weight of the evidence.

Affirmed.

STAMOS, P. J., and BROWN, J., concur.