UNITED STATES of America ex rel. Bernard WANDICK, Petitioner–Appellant,

v.

James A. CHRANS & Neil Hartigan, Respondents–Appellees.

No. 86–3073.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 20, 1989.
Decided March 15, 1989.

Bernard Wandick, Pontiac, Ill., Steven O. Ross, Chicago, Ill., for petitioner-appellant.

Arleen C. Anderson, Atty. Gen., Chicago, Ill., for respondents-appellees.

Before BAUER, Chief Judge, and KANNE, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

Petitioner–Appellant Bernard Wandick appeals from the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. After a bench trial in the Circuit Court of Cook County, Illinois, petitioner was convicted of murder, armed violence, and unlawful use of weapons. He was sentenced to twenty-five years imprisonment on the murder charge and a concurrent five-year sentence on the armed violence and unlawful use of weapons counts. The Illinois Appellate Court for the First Judicial District, on September 25, 1984, affirmed the conviction in an unpublished order, *People v. Wandick*, 127 Ill.App.3d 1164, 91 Ill.Dec. 384, 483 N.E.2d 730. On February 5, 1985, the Illinois Supreme Court denied leave to appeal. The District Court for the Central District of Illinois, on November 17, 1986, denied Wandick's petition for writ of habeas corpus.

On December 9, 1986, the district court granted his request for a certificate of probable cause as to one of his claims, but denied the request as to the other one. Our court, on April 9, 1987, issued an order that permitted petitioner to address only the issue for which the district court granted a certificate of probable cause. On June 8, 1988, our court, on our own motion, vacated the portion of our April 9, 1987, order permitting Wandick to address only the one issue. We ruled that the district court may not limit a certificate of probable cause to specific issues; we construed the district court's action in granting a certificate of probable cause as to one of two issues raised as a grant of an unlimited certificate. This appeal followed.

Wandick challenges his conviction on two grounds. First, he argues that he did not voluntarily and intelligently waive his right to a jury trial. Second, he contends that there was insufficient evidence in the record to prove his guilt beyond a reasonable doubt. For the reasons stated below, we affirm the district court's denial of the petition for writ of habeas corpus.

I.

The events involved in this case transpired on the evening of December 31, 1980, as several friends of Wandick were preparing to celebrate New Year's Eve. The State's case centered around the testi-

mony of an eyewitness, Shirley Eaton. Eaton testified that after she returned from a store at approximately 8:40 p.m., she and the victim, Darnell Thompson, went to Sandra Broughton's apartment. While at the apartment, Eaton and Broughton, the petitioner's cousin, heard a car horn from the alley behind the building. Eaton then testified that Broughton said, "That's Tyrone." Eaton further testified that after Thompson left the apartment, she heard a gunshot. She said, "They're shooting already." Broughton then stated, "It's probably just Tyrone and them, clowning."

When Eaton looked out the rear window of the third-floor apartment, she saw Thompson lying in the alley. She testified that she and Broughton saw a young man jump out of the gangway with a long shotgun or rifle and aim it directly at Thompson. While Broughton and Eaton screamed, "Don't do it! Don't do it! Don't shoot Tyrone," petitioner shot the victim. Eaton further identified Wandick as the man she saw fire the shot and testified that she referred to him as Tyrone. After the shooting, the police arrived at the alley and questioned Eaton about it.

Eaton also testified that she had seen Wandick about ten times before the shooting and that his girlfriend and he had been to her apartment. She added that she had last seen him on Christmas Eve, about a week before the shooting. She gave the police Wandick's first name and told them that he stutters when he speaks. She also testified that an alley light illuminated the shooting area, and that she had not been drinking or using drugs on the night of the shooting.

Petitioner's defense consisted primarily of alibi testimony from his girlfriend and father. Edith Winder, petitioner's girlfriend, testified that she and Wandick went to Momence, Illinois on December 27, 1980, to visit petitioner's father. She further testified that she and petitioner stayed in Momence for more than two weeks and that petitioner did not leave his father's

house at all on December 31, 1980. She explained that on the evening of December 31, 1980, she and Wandick were in the house playing cards and talking.

Petitioner's father, Avell Wandick, testified that his son and Winder arrived in Momence on December 27, 1980, and stayed until after New Year's Day. He further testified that his son and he went hunting on December 31, 1980, and that at approximately 9:00 p.m. his son was in his home watching television. Sandra Broughton, the petitioner's cousin, testified for the defense that Eaton was "very high" on the evening of the shooting and that the alley was not well lit. She also admitted having seen the shooting, but denied having seen the petitioner in the alley or having told the police that the petitioner shot the victim.

In rebuttal, Officers Ugorek and Magnine testified that the alley was well lit and that Eaton was not under the influence of drugs or alcohol on the night of the shooting. Officer Ugorek further testified that he had spoken with Broughton after the shooting and she had told him that she had seen the petitioner shoot the victim and had given the officers Wandick's addresses.

After the trial judge found the petitioner guilty, Wandick moved for a new trial based on the testimony of two additional witnesses. Both witnesses, friends of the petitioner's father, testified that they saw the petitioner hunting in Momence between 8:00 and 9:00 p.m. on the night of the shooting.

Additional facts will be discussed in the course of this opinion.

## II.

Appellant's first argument on appeal is that he did not voluntarily and intelligently waive his right to a jury trial guaranteed by the sixth and fourteenth amendments to the United States Constitution. Specifically, he contends that the court's explanation to him of his right to trial by jury was inadequate. He claims that he was not informed that a jury verdict must be unanimous [1] or that he had the right to partic-

---

1. Under Illinois law, a jury verdict must be unanimous. ILL.ANN.STAT. ch. 38, ¶ 115–4(*o*)

(Smith–Hurd 1988).

ipate in jury selection. Wandick further asserts that the fact that he never executed a jury waiver form indicates that he did not knowingly waive his right to a jury trial.

The right to trial by jury is fundamental in our system of criminal justice, and the sixth amendment's guarantee of the right to trial by jury applies to the states through the fourteenth amendment. *Duncan v. Louisiana*, 391 U.S. 145, 149, 88 S.Ct. 1444, 1447, 20 L.Ed.2d 491 (1968). A defendant may waive his right to trial by jury and instead submit to trial by the court. *Patton v. United States*, 281 U.S. 276, 298, 50 S.Ct. 253, 258, 74 L.Ed. 854 (1930).

Since the right to trial by jury is such an important right, we can never presume waiver from a silent record. In a collateral proceeding, the record or independent evidence must indicate a valid waiver. *See Carnley v. Cochran*, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962) (waiver of counsel); *cf. Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969) (direct appeal of guilty plea). However, the defendant has the burden of proving that his waiver was not freely and intelligently made. *See Adams v. United States ex rel. McCann*, 317 U.S. 269, 281, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942), *amended on denial of petition for rehearing*, 317 U.S. 605, 87 L.Ed. 568 (1943) (jury trial waiver); *cf. Johnson v. Zerbst*, 304 U.S. 458, 468–69, 58 S.Ct. 1019, 1024–25, 82 L.Ed. 1461 (1938) (right to counsel).

" 'Courts indulge every reasonable presumption against waiver' of fundamental constitutional rights...." *Zerbst*, 304 U.S. at 464, 58 S.Ct. at 1023. "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." *Id.* When waiving a constitutional right, one must do so voluntarily, knowingly, and intelligently with "sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). The determination of whether there has been a valid waiver must depend upon the unique circumstances in a particular case. *See Adams*, 317 U.S. at 278, 63 S.Ct. at 241.

▪ With this background in mind, we consider what took place in the instant case. The following colloquy occurred at trial among the court, defense counsel, and the defendant:

The Court: Okay, this is a bench, I take it?

Mr. Howard [defense counsel]: Yes, sir.

The Court: Mr. Wandick, you have a right to trial by jury. That means twelve fair and impartial people will be selected in this court room [sic]. They would hear the facts of your case and pass on the issue of whether you're guilty or not guilty. You wish to waive a jury? [sic]

The Defendant: Yes, sir.

The Court: Mr. Howard, would you have him execute a jury waiver in writing?

Mr. Howard: Yes, sir.

Supp. Tr. at 7. Although the record on appeal contains no written jury waiver form, the half-sheet memorandum for the same date contains the handwritten notation: "Deft. advised as to his right to trial by jury (signs jury waiver)." *People v. Wandick*, 127 Ill.App.3d 1164, 91 Ill.Dec. 384, 483 N.E.2d 730 (Ill.1984).

The Illinois Appellate Court concluded that "the record itself refutes the defendant's claim that he did not knowingly and voluntarily waive his right to a jury trial." *Id.* at 4. Similarly, the district court concluded that "the trial judge's explanation to the petitioner concerning his rights to a jury trial, though cursory, satisfies the requirement that, in a collateral proceeding, either the record or independent evidence must demonstrate a valid waiver." District Court's Order, Rec. 14, at 4. We agree.

While the judge's explanation to petitioner of his right to a jury trial was somewhat cursory, there is no constitutional requirement on how long the judge's explanation must be. The concrete understanding of a jury trial which the record discloses that Wandick possessed was sufficient for a knowing and intelligent waiver. The collo-

quy among the judge, the petitioner, and his attorney indicates that Wandick understood that he had a right to a jury trial, that the jury would consist of twelve people from the community, and that the jury would hear the facts of the case and determine his guilt or innocence according to the law. In addition, the fact that petitioner was represented by competent counsel throughout the proceedings further indicates that he knowingly waived his right. *United States ex rel. Williams v. DeRobertis*, 715 F.2d 1174, 1182 (7th Cir.1983), *cert. denied*, 464 U.S. 1072, 104 S.Ct. 982, 79 L.Ed.2d 219 (1984). Petitioner understood that he was entitled to a trial by jury, but decided under counsel's advice to waive that right.

Wandick has not sustained his burden of proving that the waiver of his right to trial by jury was invalid. While we agree with him that no signed waiver form appears in the record, this omission does not make his waiver per se invalid. The half-sheet memorandum indicates that the petitioner signed a waiver, and he has not submitted an affidavit suggesting that he did otherwise. Under the circumstances, we hold that petitioner understood that he had a choice between a trial by judge and a trial by a jury of twelve of his peers, and that he voluntarily and intelligently waived his right.

Petitioner, however, relying on *United States v. Scott*, 583 F.2d 362 (7th Cir.1978) (per curiam) and *United States v. Delgado*, 635 F.2d 889 (7th Cir.1981), asserts that he did not understandingly waive his right to a jury trial because he was not informed that a jury verdict must be unanimous or that he had the right to participate in jury selection. Our court has already considered the merits of this argument in *Williams*, 715 F.2d at 1174. In that case, we declined to hold that awareness of participation and substantial majority attributes of a jury trial is constitutionally required for valid waiver. *Id.* at 1178.

Petitioner's reliance on *Scott* and *Delgado* is misplaced. In *Scott*, 583 F.2d at 364, we adopted, pursuant to our supervisory power, a rule which requires a district court to interrogate a defendant in order to ensure that he understands his right to a

jury trial before the court can accept his waiver of that right. In *Delgado*, 635 F.2d at 889, we expanded upon the supervisory rule enunciated in *Scott*. In *Delgado*, we specified four areas that a judge must cover in the interrogation. The court must explain to the defendant (1) that a jury is composed of twelve members of the community, (2) that the defendant may participate in the selection of jurors, (3) that the verdict of the jury must be unanimous, and (4) that if the defendant waives a jury trial, the judge alone will determine guilt or innocence. *Id.* at 890. Since we imposed the *Delgado* requirements as an exercise of our supervisory power, we can impose these requirements on the states only if we find that they are constitutionally mandated. *Williams*, 715 F.2d at 1186. In *Williams*, we explicitly held that while it may be advisable for states to require that criminal defendants be informed of the *Delgado* requirements, personal knowledge of the right to participate in the selection of jurors and the right to be convicted only upon a substantial majority vote of the jury is not constitutionally required for a knowing and intelligent jury waiver. *Id.* at 1178.

As we explained in *Williams*, we cannot accept petitioner's contention that his jury trial waiver was invalid simply because he did not know about jury selection procedure and a right to a substantial majority verdict. *Id.* at 1181. Wandick has never argued that he would have requested a bench trial if he had known about these concepts or that he would demand a bench trial on retrial of the charges against him if we reverse the denial of the writ. *See id.* We are not persuaded that a state defendant's awareness of the jury selection and substantial majority attributes of a jury trial are so crucial "in weighing the available options that it would be fundamentally unfair to give effect to a waiver executed without knowledge of these attributes...." *Id.* "To require that a defendant have an exhaustive knowledge of all the doctrinal subtleties of Sixth Amendment jurisprudence in order for him to waive its protections would be tantamount to saying that only an attorney, and a highly competent criminal defense attor-

ney at that, would be capable of a knowing waiver." *Id.* at 1179–80. Based on the record in this case, we feel confident in holding that petitioner waived his right to trial by jury voluntarily and intelligently.

### III.

■ Appellant next argues that there was insufficient evidence in the record to prove his guilt beyond a reasonable doubt. Specifically, he contends that Eaton's identification testimony was not credible and that the lighting conditions in the alley were inadequate for positive identification. He also argues that the testimony of one eyewitness is inadequate for the state to meet its burden of proof and that the trial court improperly disregarded the testimony of his alibi witnesses.

The standard to be applied by a federal court on habeas review in assessing the sufficiency of the evidence supporting a state court conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States ex rel. Newell v. Mizell,* 667 F.2d 1247, 1248 (7th Cir.), *cert. denied,* 459 U.S. 868, 103 S.Ct. 151, 74 L.Ed.2d 127 (1982).

■ We will not disturb the trial judge's determination that the petitioner was guilty beyond a reasonable doubt. Credible testimony of one identification witness is sufficient to support a conviction. *United States v. Smith,* 563 F.2d 1361, 1363 (9th Cir.1977), *cert. denied,* 434 U.S. 1021, 98 S.Ct. 747, 54 L.Ed.2d 769 (1978); *see United States v. Tucker,* 773 F.2d 136, 139 (7th Cir.1985), *cert. denied,* 478 U.S. 1021, 106 S.Ct. 3337, 92 L.Ed.2d 742 (1986). The trial judge found that "Eaton's identification was clear and convincing and there were adequate lighting conditions." Tr. at 386. He further commented that the identification "[w]as made by someone [who] in the Court's opinion was a believable individual who knew the defendant. Had seen him approximately ten times earlier." *Id.* at 391. As a federal habeas court, we have no license to redetermine the credibility of a witness whose demeanor has been ob-

served by the state trial court, and not by us. *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 851, 74 L.Ed.2d 646 (1983). The trial judge found Eaton to be a credible witness and determined that she had ample lighting to see the shooting in the alley. We accept his findings.

The trial judge also found that petitioner's alibi testimony was wrought with inconsistencies. The judge remarked that, "I heard inconsistencies from the four witnesses, major inconsistencies." Tr. at 395. Some alibi witnesses testified that the petitioner went hunting on the night of the shooting, while another witness testified that he did not leave the house at all. *See id.* Acting in his role as the trier of fact, the judge chose to believe Eaton's testimony over those of the alibi witnesses. Such a credibility determination is solely within the province of the trial judge, and we will not attempt to substitute our determination for that of his. Based on the record, we agree that sufficient evidence was produced at trial to justify a finding of guilt beyond a reasonable doubt.

For all the foregoing reasons, the district court's judgment denying Wandick's petition for habeas relief is

AFFIRMED.