**John KINES, Petitioner–Appellant,**

v.

**Salvadore GODINEZ, Warden, Respondent–Appellee.**

No. 92–2308.

United States Court of Appeals, Seventh Circuit.

Argued June 3, 1993.

Decided Oct. 20, 1993.

Robert J. Palmer (argued), May, Oberfell & Lorber, South Bend, IN, for petitioner-appellant.

Terence M. Madsen, Asst. Atty. Gen., Steven J. Zick (argued), Crim. Appeals Div., Chicago, IL, for respondent-appellee.

Before BAUER, CUDAHY and KANNE, Circuit Judges.

KANNE, Circuit Judge.

An Illinois trial court convicted John Kines of first degree murder, intimidation, and concealment of a homicidal death. He unsuccessfully pursued his direct appeal in the Illinois courts. Kines then sought habeas corpus relief in federal court. Kines argues that the district court improperly relied on the state appellate court summary of the record in denying his petition, that the prosecution had not proved his guilt beyond a reasonable doubt, and that his trial counsel was ineffective. For the reasons set forth in this opinion, we affirm the district court's denial of Kines' habeas petition.

## I. *Background*

Kines and two codefendants, Saul Berry and Clayton Jordan, were charged with four counts of first degree murder, two counts of aggravated criminal sexual assault, one count of intimidation, and one count of concealment of a homicidal death. The trial court severed Kines' trial from the trial of Berry and Jordan. Kines waived his right to a jury, and a bench trial followed.

The key witness for the state was Cornell Finley, an eleven year-old boy who witnessed the events surrounding the murder. Because the state had no physical evidence linking Kines to the offenses charged, Cornell's testimony was essential to the prosecution. The following summarizes Cornell's trial testimony.

Around 6:00 p.m., on a January evening, eleven year-old Taneka "Candy" Jones visited Cornell at the second floor apartment in which Cornell and his mother lived. The mothers of Candy and Cornell then left for the evening, leaving the pair to watch television. Clayton Jordan, who lived in the apartment below Cornell, phoned the boy and visited the apartment briefly. Jordan left, but returned a short time later accompanied by Saul Berry. The two men stayed for a short time, then departed.

The defendant, Kines, a friend of the Finley family, then came to the Finley apartment and joined Cornell and Candy in watching television. Jordan returned once again,

spoke with Kines, and left telling Kines that he would see him later. Kines then went into Mrs. Finley's bedroom to sleep. Cornell fell asleep as he and Candy were watching television.

A noise woke Cornell, and he saw Jordan put something around Candy's face and drag her into Mrs. Finley's bedroom. After hearing noises coming from the bedroom, Cornell approached the bedroom door and peered inside. Cornell saw Candy naked on the bed with Jordan moving up and down on top of her with his pants unzipped. Berry was holding Candy's head, and Kines was standing by the closet. Cornell heard Candy say, "Stop, that hurts."

Cornell returned to the living room and pretended to be asleep. Later, Cornell returned to the bedroom and saw Candy lying on a blanket on the floor, with Berry holding her head and Jordan holding her legs. Kines was strangling Candy with a cloth tied around her neck, and her hands were shaking. Berry, Jordan, and Kines wrapped Candy, who was no longer moving, in the blanket. Cornell sneaked back to the living room and once again pretended to be asleep on the couch.

Berry, Jordan, and Kines carried Candy out of the apartment. Cornell followed the three men to the basement through a different stairwell. When he got to the basement, the boy saw Berry and Kines laughing at Jordan, who was holding a tissue with one hand and using the other to masturbate while standing over Candy's dead body. Cornell returned to his apartment, followed shortly by Berry, Jordan, and Kines. The three sat near Cornell on the couch and told him that the same would happen to him and his mother if he told anybody about what occurred.

The parents of the two children returned the next morning, and upon realizing that Candy was missing began searching for her. Kines remained on the couch watching television. After going to the basement, Mrs. Jones discovered the body of her daughter and called the police.

The police questioned Cornell while Kines was still in the apartment. Cornell was afraid of Kines' threats, and told the police a story inconsistent with his trial testimony. Three months later the police once again questioned Cornell, who remained frightened of Kines and told the police that Kines did not choke Candy. Cornell denied that the police promised him a Michael Jordan basketball to testify untruthfully.

An evidence technician from the Du Page County Sheriff's Office testified concerning the surroundings and condition of the body at the crime scene. The technician testified that the basement storage area where Candy's body was discovered was very dirty, with loose paint chips on the floor. Candy's head was near a locked doorway that had fingerprints matching those of Berry. A white tissue stuck to chicken wire to the right of the body contained semen stains later found to be similar to that of Jordan. The technician testified that he smelled no urine in the storage area.

The technician further testified that Candy's blue jeans, which were located next to her right leg, were covered with dirt, but the white panties found between her legs had dirt only on the back. Her orange shirt was dirty on the bottom of the back and the center of the front, and her sweater had dirt along the left arm and on the back near the collar. A shirt was tied around Candy's neck, and there appeared to be dirt inside of the knot used to tie the ligature.

A forensic pathologist added further details. The pathologist testified that Candy died of ligature strangulation from the sleeve of a blouse being tied tightly around her neck. Candy had small abrasions on her right temple and both cheeks, and a bruise on the left side of her jaw. Candy also had dirt near her left eye consistent with her face rubbing the floor, and three gray paint chips were located inside her mouth under her upper lip. After being shown a photograph of the back of Candy's neck, the pathologist noted some discoloration and stated that it could be attributable to dirt. The pathologist found no urine in Candy's urinary tract.

After considering this and other testimo-

ny,[1] the trial judge found Kines guilty of one count each of first degree murder, intimidation, and concealment of a homicidal death. The defense moved to reopen the case to present expert testimony that would show that Candy died in the basement. After reviewing the proposed testimony and defense arguments, the court denied the motion, concluding that the testimony would offer no assistance. Kines was sentenced to concurrent prison terms of fifty years, five years and five years, on the respective counts.

Except for the issue of excessive sentence, Kines raises the same issues in his federal action that he raised in his direct appeal: (1) no proof of guilt beyond a reasonable doubt; (2) ineffective assistance of counsel; (3) refusal by the trial court to allow a defense witness to testify concerning a hearsay statement; and (4) excessive sentence. The district court denied Kines' habeas corpus petition and this appeal followed.

## II. *Analysis*

### A. *Reliance on the Appellate Summary*

■ The first argument Kines now raises is that the district court, in denying his petition for a writ of habeas corpus, erred in relying on a state appellate court summary of the facts rather than referring to the state court trial record. We addressed the same issue in *United States ex rel. Green v. Greer,* 667 F.2d 585, 586–89 (7th Cir.1981), and held that the district court acted properly in exclusively relying on a state appellate court summary of the facts because the petitioner failed to identify any inaccuracies or incompleteness in the summary. *Greer* dictates our conclusion in this case. Here again the district court properly relied on the state appellate court summary of the facts.

Our reasoning in *Greer* is on all fours with this case. Like Kines, Green appealed his murder conviction to the state appellate court, before which he argued that the evidence at trial failed to establish his guilt beyond a reasonable doubt. Also as oc-

curred here, the state appellate court reviewed the record and affirmed the trial court in an opinion that contained an extensive summary of the facts. *See id.* at 587; *see also People v. Green,* 62 Ill.App.3d 420, 19 Ill.Dec. 604, 379 N.E.2d 119 (1978). Finally, Kines' argument parallels that of Green in that neither "challenged the accuracy or completeness of the facts as summarized by the state appellate court, but only whether the conclusions drawn from those facts were permissible." *See Greer,* 667 F.2d at 587–88. In fact, the summary in this case consumed the first fifteen pages of the appellate court's slip opinion, far more information than the *Greer* summary provided.

Kines contends that the district court should have examined the 85 photographs taken of the crime scene and victim. The state appellate court's summary of the facts, however, provided the district court with an extensive description of both the crime scene and the victim. Kines never asserted that the photographs would demonstrate the inaccuracy or incompleteness of that description.

In fact, the appellate court's summary explicitly details every aspect of the photographs Kines' counsel identified as important at oral argument—the location of Candy's clothing, bruises on her face, dirt on her clothing and inside the ligature used to strangle her, and paint chips underneath her lip. The district court examined that information as detailed in the summary and concluded, as is the standard for sufficiency of the evidence on habeas review, that when viewed in the light most favorable to the prosecution "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Given the cumulative nature of the photographs, the district court properly examined only the summary.

### B. *Proof of Guilt Beyond a Reasonable Doubt*

■ Kines next argues that the district court erred in not granting his habeas peti-

---

1. This opinion does not purport to give a comprehensive list of all facts considered by the trial court. For a more detailed statement of facts, *see People v. Kines,* 210 Ill.App.3d 1107, 180 Ill.Dec. 650, 607 N.E.2d 719 (2nd Dist.1991) (slip opinion).

tion because the trial court purportedly used a "clear and convincing" standard of proof, and makes the related argument that the evidence brought against him was insufficient to establish guilt beyond a reasonable doubt. Kines failed to raise the "clear and convincing" argument before the district court, and we will not entertain it now.[2] *See Garlington v. O'Leary,* 879 F.2d 277, 282 (7th Cir. 1989). Kines did preserve his argument based on insufficiency of the evidence, which we now consider.

■ Kines concedes that the proper standard for determining sufficiency of the evidence on habeas review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof of guilt beyond a reasonable doubt. *United States ex rel. Wandick v. Chrans,* 869 F.2d 1084, 1089 (7th Cir.1989), citing *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. Kines argues that because the trial court felt the need to examine corroborating evidence to determine the veracity of the only eyewitness testimony, from eleven-year-old Cornell Finley, and because that corroborating evidence failed to implicate Kines, finding proof beyond a reasonable doubt must be irrational.

Not only could any rational trier of fact have found proof beyond a reasonable doubt, the reasoning the trial court expressed on the record is quite logical. The trial court carefully explained that given the detailed nature of Cornell's testimony,[3] the close fit between his testimony and the physical evidence, the explanation for his prior inconsistent accounts, and the lack of a motive to lie in court (and indeed the countervailing motive to exculpate a family friend), it believed

Cornell's testimony inculpating Kines. The lack of physical evidence inculpating Kines in no way makes the fact finder's belief of Cornell irrational.

The trial judge concluded that the prosecution had proved its case beyond a reasonable doubt because he believed Cornell's account of the events. Federal courts are in no position to redetermine the credibility of witnesses observed by state trial courts. *Chrans,* 869 F.2d at 1089, citing *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 850, 74 L.Ed.2d 646 (1983). Because a single witness can suffice to prove guilt beyond a reasonable doubt, *Chrans,* 869 F.2d at 1089, the district court correctly held that any rational trier of fact could have arrived at the same conclusion as the trial court.

### C. Sixth Amendment Right to Effective Assistance of Counsel

■ Kines finally argues that his trial counsel was ineffective by failing timely to present an expert witness who would have testified that the victim died in the basement. Under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to establish a Sixth Amendment ineffective assistance of counsel claim Kines must demonstrate both that the performance of his counsel was deficient and that the deficiency prejudiced his defense. *Id.* at 687, 104 S.Ct. at 2064. Both the state appellate court and the district court held that the failure to timely present the expert testimony resulted in no prejudice because the testimony was consistent with Cornell's testimony that Candy was attacked and strangled in Mrs. Finley's bedroom.[4]

2. Kines also failed to raise the argument at the state court level, and he never demonstrated cause for the default as required by the "cause and prejudice" test. *See United States ex rel. Spurlark v. Wolff,* 699 F.2d 354, 361 (7th Cir. 1983) (en banc). Thus, even if we were to ignore the waiver at the district court level, we could not properly entertain Kines' argument.

3. The trial court noted, for example, Cornell's testimony that Jordan masturbated over Candy's dead body while holding a tissue, and that the police in fact did discover a tissue with semen on it similar to Jordan's in the basement. The court explained that for Finley "to come up with the

details provided at that age, he'd have to have the imagination of a Lewis Carroll in writing one of his novels." The fact that other evidence corroborated Cornell's testimony bolsters his credibility even further.

4. Kines asserts that both the state appellate court and the district court held that the performance of his counsel was deficient. That simply is not the case. *Strickland* expresses a preference for analyzing prejudice before deficient performance, *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069. ("In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by

In examining the issue of prejudice, a court should determine whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. *Strickland* further clarified that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The failure to timely submit expert testimony in this case does not undermine our confidence in the outcome of Kines' trial. The state court judge, acting as the finder of fact, reviewed the expert testimony and defense arguments in considering a motion to reopen the case to present the testimony. He denied the motion because it concluded that the testimony would offer no assistance, a finding of fact to which we are highly deferential.

Even setting aside our deference to the factual findings of the state trial court, three considerations support its ruling. First, during trial the defense introduced evidence on the same matter as the expert testimony, thus that testimony would have been merely cumulative. Second, as the state appellate court and the district court noted, the exact moment of death occurring in the basement is consistent with being attacked and strangled upstairs. Finally, the issue is immaterial because Cornell's testimony clearly placed Kines both upstairs and in the basement. The defense attorney's purported error did not affect the outcome of the trial, and Kines' ineffective assistance argument therefore falls short.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

the defendant...."), and that is precisely how the state appellate court and the district court analyzed the issue. Both courts merely assumed the existence of deficient performance to demonstrate that the purported deficiency did not prejudice Kines. We do the same here.