47 F.3d 1173
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Jarvis BROOKS, Petitioner-Appellant,
v.
Odie WASHINGTON, Warden, and Roland W. Burris, Attorney
General of the State of Illinois, Respondents-Appellees.
 No. 93-3406.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 3, 1994.*
Decided Jan. 10, 1995.
 
 Before PELL, COFFEY and EASTERBROOK, Circuit Judges.
 
 ORDER
 
 1
 Jarvis Brooks, an Illinois state prisoner who was convicted of murder following a bench trial, appeals the district court's denial of his petition for a writ of habeas corpus. 28 U.S.C. Sec. 2254. Jarvis alleges that the evidence was insufficient to support his conviction and that defense counsel provided ineffective assistance by presenting inconsistent defenses at trial and failing to argue that the evidence better supported a conviction for involuntary manslaughter. We agree with the district court that based upon the state appellate court's factual findings, People v. Brooks, 560 N.E.2d 919 (Ill.App.Ct.1990), appeal denied, 567 N.E.2d 335 (1991), a rational trier of fact could have found Brooks guilty of murder beyond a reasonable doubt pursuant to 720 ILCS 5/9-1(a)(2) in that he committed acts knowing they created a strong probability of death or great bodily harm to another individual.[1] Moreover, defense counsel did argue that at most, the evidence supported a conviction for involuntary manslaughter. We adopt the opinion of the district court and AFFIRM the court's denial of the petition for a writ of habeas corpus.
 
 ATTACHMENT
 IN THE UNITED STATES DISTRICT COURT
 FOR THE NORTHERN DISTRICT OF ILLINOIS
 EASTERN DIVISION
 
 2
 United States of America ex rel. Jarvis Brooks, Petitioner,
 
 
 3
 v.
 
 
 4
 Odie Washington, Respondent.
 
 No. 92 C 7860
 OPINION AND ORDER
 CHARLES R. NORGLE, Sr., District Judge:
 
 5
 Before the court is Jarvis Brooks' ("Brooks") petition for a writ of habeas corpus. The petition is denied for reasons that follow.
 
 FACTS[1]
 
 6
 Brooks is a state prisoner attacking his conviction in the Circuit Court of Cook County for the murder of his ex-girlfriend Hershell Comier ("Comier"). Brooks was found guilty after a bench trial of murder and armed violence and was sentenced to twenty-five years in prison. The trial judge found Brooks not guilty under count I, which alleged Brooks intended to kill or do great bodily harm or that he performed acts knowing that the acts would cause death pursuant to ILL.REV.STAT. ch. 38, p 9-1(a)(1). However, the judge found Brooks guilty of murder under count II, which alleged Brooks committed acts which created a strong probability of death or great bodily harm to another in violation of subsection 9-1(a)(2).
 
 
 7
 The evidence at trial established that Brooks' relationship with Comier ended approximately three months prior to Comier's death on September 17, 1987. Brooks was distressed about the break up with Comier and often thought of killing himself. The evidence showed that Brooks exhibited self destructive and violent behavior during the previous periods in which his relationship with Comier was broken up. He would often cut himself with a knife or other sharp object and had twice attempted to kill himself. Brooks did this in the presence of Comier, who would intervene by grabbing Brooks' arm or his knife.
 
 
 8
 Robert Wilson ("Wilson"), Comier's uncle and Brooks' acquaintance of four or five years, was the only eyewitness to the incident in question other than Brooks. Wilson testified that Brooks drove with him to Comier's apartment between 6:30 and 7:00 after the two had played basketball together. Brooks told Wilson that he was going to pick up his daughter, who was in the custody of Comier. Although Wilson did not know it, Brooks was carrying a gun in his waistband. Brooks and Wilson went to the front door of the two-story apartment building where Comier lived and Brooks knocked on the door. Comier came from the second floor to the door and opened it. After Brooks told her that he had come to pick up his daughter, Comier went back upstairs and retrieved her. When Comier returned, Brooks asked her if anyone else was in the apartment, knowing that Comier had moved in with a new boyfriend just four days earlier, to which she responded "No." Wilson took Brooks' daughter back to the car and Brooks remained to talk with Comier. Comier and Brooks talked for five minutes and then walked together up the stairway.
 
 
 9
 Wilson then testified that Comier called to Wilson from her window and requested that he come up and get Brooks. When Wilson arrived upstairs, Brooks was standing in the hallway in front of Comier's doorway, which was closed, and was yelling to Comier that he wanted to talk to her. Wilson persuaded Brooks to leave and the two walked out to the car. Wilson closed and locked the door to the apartment building.
 
 
 10
 Brooks then left the car and went to the back of the apartment building, out of Wilson's view. Wilson, who at the time was sitting in the car, testified that he heard a gunshot about a minute or two later. Wilson ran to the back of the building and went up the stairs to Comier's apartment. He saw that Comier's back door had been kicked in, although the door was normally braced by a two-by-four in a metal bracket attached to the door. Wilson entered the apartment only to find Brooks standing with a gun in his hand. Brooks told Wilson that he and Comier were struggling when the gun went off; he said that it was an accident. Wilson found Comier lying on the floor in the front room; she had been shot in the chest and was lying on her back. Wilson checked to see if she was alive but found she was dead. He then noticed two lacerations on Comier's inside lower lip. Brooks refused to give Wilson the gun when he asked for it; instead, Brooks ran downstairs to the car, told Wilson he was going to call an ambulance, and drove away.
 
 
 11
 Wilson saw a police car in the vicinity of Comier's apartment and told the police what had happened. After inspecting the apartment, the police searched for Brooks. The search was ended, however, once it was learned that Brooks had turned himself in at the Eleventh District police station at approximately 8:15 p.m.
 
 
 12
 Brooks testified at the trial. Brooks testified that he did not intend to kill Comier. He also substantially corroborated Wilson's version of the incidents leading up to the shooting. Brooks additionally testified that he walked to the back of the building and kicked open the rear door. He said he forced himself into the apartment in order to speak with Comier. Brooks testified that he was angry when he entered the apartment, but he possessed the gun in order to kill himself, not Comier. Brooks stated that he and Comier sat on a sofa in the front room as Brooks begged and pleaded with her to come back to him. Brooks testified that he then put the gun to his head and cocked the hammer, although he said he did not have his finger on the trigger. Comier stood up and pleaded for Brooks not to kill himself. According to Brooks, she then snatched the gun from his hand. Brooks claimed that, as he stood up to recover the gun, Comier turned and fell to the floor and the gun discharged. Brooks denied that the gun was in his hand when it went off and denied telling the police that the gun was in his hand when it went off. Brooks also denied that Wilson came up into the apartment. Brooks stated instead that he ran downstairs and told Wilson that Comier had been shot accidentally and that Wilson should call an ambulance and the police.
 
 
 13
 Brooks disposed of the gun by throwing it on a roof at Marshall High School. He then turned himself in at the police station. Officer Lloyd Peterson testified that Brooks, when he turned himself in, said "I'm the one you are looking for. I just shot my old lady." Brooks and two police officers next searched for the weapon. After searching a few locations where Brooks indicated that he had thrown the gun, the officers drove to Marshall High School where they again conducted a search for the gun. A .38 caliber revolver was found at this time and was identified at trial. When found, the gun contained four live rounds and one spent shell and was missing part of its handle. It was established by stipulation that the bullet recovered from Comier's body was fired by the gun recovered by the police and identified by Brooks.
 
 
 14
 On rebuttal, an officer McCaster also testified that Brooks stated to him "I shot my old lady." Another officer testified on rebuttal that he took a statement from Brooks after reading him his rights. He testified that Brooks told him that the gun was in his hand while he and Comier were struggling and when it went off. The officer also testified that there was no sofa in the front room of Comier's apartment and he identified photographs of the crime scene in which no sofa appeared.
 
 DISCUSSION
 
 15
 Brooks first claims that the evidence was insufficient to establish a conviction of murder beyond a reasonable doubt. Specifically, Brooks asserts that the evidence was circumstantial and did not exclude every reasonable hypothesis of innocence. Brooks also argues the trial judge's findings are inconsistent. The court rejects Brooks' position.
 
 
 16
 The Seventh Circuit has determined that, on habeas review, the court need not be satisfied that the prosecution excluded every reasonable hypothesis of innocence. Garlington v. O'Leary, 879 F.2d 277, 285 (7th Cir.1989). Instead, when assessing challenges to the sufficiency of evidence on habeas review, the court must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," after viewing the evidence in a light most favorable to the prosecution. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States ex rel. Wandick v. Chrans, 869 F.2d 1084, 1089 (7th Cir.1989).
 
 
 17
 Brooks was convicted of murder in that he committed acts knowing they created a strong probability of death or great bodily harm to Comier in violation of Sec. 9-1(a)(2). The evidence, viewed in a light favorable to the prosecution, showed that Brooks exhibited self-destructive behavior which often threatened the safety of Comier. Brooks was distraught over the break up of his relationship and was embittered by Comier's new living arrangement with another man. Brooks was angry and carried a gun when he forcibly entered through the rear entrance of Comier's apartment by kicking down Comier's barricaded door. Wilson testified that Brooks was holding the gun when Wilson entered the apartment subsequent to the gunshots and there was also Brooks' admission that he was holding the gun at the moment the gun discharged. Additionally, the circumstantial evidence included the existence of lacerations on Comier's lips which indicated violence and struggle. Wilson testified that one or two minutes elapsed between the moment Brooks left the car and the moment Wilson heard the gunfire. Brooks displayed consciousness of guilt by fleeing the scene of the crime and disposing of the weapon. Last, this court will not second guess the trial judge's credibility determination, specifically that Brooks' version of the events was not entirely accurate.
 
 
 18
 The court also rejects Brooks' claim that the trial court's findings were inconsistent. As the appellate court aptly stated, both Secs. 9-1(a)(1) and 9-1(a)(2) require two separate and distinct mental states under Illinois law. Therefore, a finding of not guilty under one section does not foreclose a finding of guilty under the other. As a result, Brooks' conviction of murder under Sec. 9-1(a)(2) was proper.
 
 
 19
 Brooks next claims he was denied the effective assistance of counsel at trial. Specifically, Brooks maintains his counsel failed to present a complete defense by ignoring or overlooking one of the charges, by presenting inconsistent defenses, and by failing to present a "defense" of involuntary manslaughter. Again, the court finds no merit in Brooks' position.
 
 
 20
 To succeed on an ineffective assistance of counsel challenge Brooks must demonstrate that his counsel's performance was deficient, meaning his counsel failed to perform as a reasonably competent attorney, and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668 (1984). There exists a strong presumption that a criminal defendant's counsel provided reasonable professional assistance, which a defendant mounting an ineffective assistance of counsel challenge must overcome. Kubat v. Thieret, 867 F.2d 351, 359 (7th Cir.), cert. denied, 493 U.S. 874 (1989). Even if counsel's performance was deficient, the defendant must demonstrate that there is a probability that the proceeding would have been different had counsel performed professionally, and this probability must be sufficient to undermine confidence in the outcome of the case. Id.
 
 
 21
 Brooks fails to overcome the strong presumption of competence. Brooks' counsel's strategy for defense during the trial was to show that the death was not intentional but was an accident. Counsel therefore did not overlook the second count of the indictment charging murder under Sec. 9-1(a)(2). Brooks' attorney's opening statement framed the inquiry at trial as being a question of intent versus accident. As counsel stated to the trial judge, "The whole issue in this case is state of mind, or whether it was an accident." See People v. Brooks, 560 N.E.2d at 925. And in closing, counsel continued to stress the accidental nature of the shooting. It was counsel's position that the evidence, at its best, could only establish involuntary homicide. As the state appellate court found, Brooks' counsel presented the arguement of involuntary murder to the trial judge and it was rejected. Because Brooks' counsel did not fail to present a complete defense, did not present inconsistent defenses, and did not fail to present the argument of involuntary manslaughter, the court finds that Brooks' counsel's performance did not fall below that which is expected of reasonable professional assistance. Brooks testified at the bench trial and was afforded an adequate opportunity to give his version of the events. Accordingly, Brooks has failed to demonstrate he was denied the effective assistance of counsel.
 
 CONCLUSION
 
 22
 For all the reasons stated above, Brooks' petition for a writ of habeas corpus is denied.
 
 
 23
 IT IS SO ORDERED.
 
 DATED: 6/16/93
 
 
 *
 Petitioner-Appellant requested oral argument with the filing of his appellate brief. After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). Neither party has responded. Accordingly, the initial request for oral argument is denied, and the appeal is submitted on the briefs and the record
 
 
 [1]
 Thus, the trial court's finding of not guilty under 720 ILCS 5/9-1(a)(1), causing the death of another with the intent to kill or do great bodily harm, is not inconsistent with a finding of guilt under Sec. 9-1(a)(2), since the statutes require proof of two separate and distinct mental states
 
 
 [1]
 The facts are drawn from the Illinois Appellate Court's opinion in People v. Brooks, 203 Ill.App.3d 493, 560 N.E.2d 919 (1990), appeal denied, 136 Ill.2d 546, 567 N.E.2d 335 (1991) and are given the presumption of correctness required by 28 U.S.C. Sec. 2254(d)